A. J. AMUNDSON, AS ADMINISTRATOR OF THE ESTATE OF PEDER SAMDAHL, DECEASED v. ANTON M. HANSON AND ANOTHER.

SARAH SAMDAHL, APPELLANT.[1]

November 10, 1921.

No. 22,468.

**Administrator's contract of sale not binding until confirmed by probate court.**

1. An administrator, licensed to sell real estate at private sale, cannot make a binding contract of sale. He can only report a proposed sale to the probate court, and the proposed purchaser acquires no interest in the land until the sale has been confirmed by the court and the purchaser has complied with the conditions prescribed by the court.

**No collateral attack on probate records.**

2. The probate records import verity and cannot be impeached in a collateral proceeding.

**Where confirmation is revoked for default of buyer, his wife acquires no interest.**

3. Where the court confirms a sale and directs the execution of a deed on compliance with the specified terms, but the purchaser fails to comply therewith, the court has power to revoke its order, or to amend it so as to authorize a sale to another, and where this is done, and the sale made to the other, the wife of the first purchaser acquires no marital interest in the land.

**No collateral attack on amending order for irregularity in procedure.**

4. Where the court has power to make such an amendment, irregularities in the procedure cannot be taken advantage of in a collateral proceeding.

[1]Reported in 185 N. W. 252.

**Wife of buyer acquires no interest when her husband procures conveyances to another.**

    5. The fact that a husband pays the purchase price for land which he causes to be conveyed to another, gives his wife no marital interest therein.

    In an action in the district court for Chippewa county to determine whether a certain deed of conveyance of real estate was procured through undue influence upon plaintiff's intestate, Sarah Samdahl and four others filed a complaint in intervention to have the report of sale of real estate and order of probate court confirming sale and the records thereof, amended by striking therefrom the words "as agent for Anton M. Hanson, deed to be executed to Anton M. Hanson," and to set aside the deed from Anton M. Hanson and wife to Julia Forest. The facts will be found in the opinion. The case was tried before Qvale, J., who made findings and ordered judgment in favor of defendants and Julia Forest and her husband, A. H. Forest. The motion of intervener Sarah Samdahl for amended findings or for a new trial, was denied. From the judgment entered pursuant to the order for judgment, Sarah Samdahl appealed. Affirmed.

    *McDowell & Fosseen,* for appellant.

    *L. D. Barnard* and *Bert O. Loe,* for respondents.

TAYLOR, C.

    Peder Samdahl, a resident of Chippewa county, died intestate March 20, 1918. He had been married twice. The defendants, Pauline Hanson and Julia Forest, are the children of his first marriage and the other defendants are their husbands. The intervener, Sarah Samdahl, is his second wife and surviving widow, and the other interveners are the children of his second marriage. The present controversy is between the defendants and the intervener, Sarah Samdahl, who is the sole appellant and will be referred to as the intervener hereafter.

    Mr. Samdahl maintained cordial relations with the children of his first marriage, and, perhaps on this account, discord and contention arose between him and the intervener and her children. He gave substantial aid to his children, however, and made no difference between

them on account of the discordant family relations.

Some time prior to April, 1915, one John Grythin died seized in fee of 240 acres of land in Chippewa county, and one I. P. Flaten was duly appointed administrator of his estate. On April 12, 1915, Flaten, as such administrator, was duly licensed·by the probate court to sell the above mentioned land at private sale. On May 3, 1915, Flaten made a written contract with Samdahl, by which he agreed to sell the land, subject to outstanding farming leases, to Samdahl for $14,400, of which $900 was to be paid on delivery of the contract, and $13,500 on July 1, 1915. On May 10, 1915, Flaten, without mentioning the written contract, reported to the probate court that, under and pursuant to the license issued to him, he had sold the land to Peder Samdahl for the sum of $14,400—$900 in cash and $13,500 on July 1, 1915, and asked the court to confirm the sale and authorize the execution of a deed of conveyance. On the same day the probate court made an order, in the usual form, confirming the sale and authorizing the administrator to execute a deed of conveyance to the purchaser, "upon compliance by him with the terms of said sale."

On the following day, May 11, 1915, Samdahl requested Flaten to arrange the matter so that the deed would be made to defendant Anton M. Hanson. On the next day, May 12, 1915, Flaten and Samdahl conferred with the judge of probate for the purpose of making the desired change. The order had been made on a printed form which contained a blank space for the name or names of the purchaser or purchasers. Samdahl's name had been written in this space. As a result of the conference, the judge of probate changed or amended the order by inserting in this space after the name of Samdahl the words "as agent for Anton M. Hanson, deed to be made to Anton M. Hanson." A like change was made in the report of sale. As a result of these changes the records of the probate court show that the sale was made to Samdahl as agent for Hanson, and that the deed was to be executed to Hanson on compliance by him with the terms of the sale. On June 30, 1915, Samdahl paid the remainder of the purchase price and Flaten executed an administrator's deed of the land to Hanson. It appears that Samdahl intended to give this land to his two daughters, Pauline Hanson and

Julia Forest, that he directed Hanson to divide the land equally between them, and that Hanson subsequently conveyed an undivided one-half of it to Julia Forest. It also appears that Samdahl's object in causing the land to be conveyed to Hanson was to place it where his wife could not thwart or hinder his purpose to give it to these two daughters.

The sole question presented is whether the interest which the statute gives a wife in the real estate of her husband attached to the land in controversy in favor of the intervener.

Unless either the legal or equitable title to the land vested in Peder Samdahl at some time, there was nothing to which the marital rights of the intervener could attach. There is, and could be, no claim that the legal title ever vested in him, and the question for consideration is whether the equitable title vested in him. It is claimed that the written contract with Flaten, the administrator of the Grythin estate, gave him the equitable title. Such a contract with the owner of the land might, perhaps, give an equitable title to the vendee. But Flaten was not the owner of the land, and no contract made by him at that time and in that manner could create any interest in the land or be enforced against it, at least until translated into a judgment or decree of the probate court. Myrick v. Coursalle, 32 Minn. 153, 19 N. W. 736. Under his license to sell he could make no binding contract, but could only report a proposed sale to the court, and it then rested with the court to determine whether the sale should be made, G. S. 1913, § 7369; and the purchaser would acquire no rights which he could enforce against the land or the heirs, until the court had confirmed the sale and he had complied with the conditions prescribed by the court. It is clear that Samdahl acquired no interest in the land under the written contract with Flaten, for it was beyond the power of Flaten to convey an interest therein by such a contract.

It is claimed that the original order of the probate court, confirming the sale, named Samdahl as purchaser, and operated to vest him with the equitable title, and that the subsequent change or amendment of the order was void. The probate records, as produced at the trial, show that the court confirmed a sale to Hanson and authorized a conveyance

to Hanson, and the evidence presented for the purpose of showing that a change had been made in the record was objected to on the ground that it was incompetent, inadmissible and tended "to impeach in a collateral proceeding the verity of the records of the probate court." We think this objection well taken. The records of the probate court import verity and cannot be impeached in this manner in this collateral proceeding. Dayton v. Mintzer, 22 Minn. 393; Curran v. Kuby, 37 Minn. 330, 33 N. W. 907; ·Logenfiel v. Richter, 60 Minn. 49, 61 N. W. 826; Kurtz v. St. Paul & D. R. Co. 61 Minn. 18, 63 N. W. 1; Pierce v. Maetzold, 126 Minn. 445, 148 N. W. 302; Doran v. Kennedy, 122 Minn. 1, 141 N. W. 851.

But even if the record could be impeached in this manner, it would not avail the intervener. Assuming that the order was made and subsequently changed as claimed by the intervener, the original order confirmed a sale to Samdahl and authorized a conveyance to him on compliance with the terms of the sale. The order was conditional only and Samdahl could acquire no interest in the property until he complied with the conditions. He did not act upon this order nor comply with its conditions. Instead of doing so he made an application to have the sale changed from himself as purchaser to Hanson as purchaser. This was, in effect, a refusal to make the purchase as provided in the original order. Upon a proper application and showing, the court had power, at least in case of a private sale, to revoke or amend its order at any time before the purchaser had complied with its conditions or received his deed. G. S. 1913, §§ 7211, 7490; Savela v. Erickson, 138 Minn. 93, 163 N. W. 1029; Greenough v. Small, 137 Pa. 132, 20 Atl. 553, 21 Am. St. 859; Gary, Probate Law, § 532; Woerner, American Law of Administration, § 479.

In Davis v. Touchstone, 45 Tex. 490, it was held that the court, after confirming an administrator's sale to one purchaser, could change its order and confirm the sale to a different purchaser if the first consented thereto. In State v. Probate Court of Ramsey County, 19 Minn. 85 (117) and State v. Probate Court of Sibley County, 33 Minn. 94, 22 N. W. 10, cited by the intervener, it was held that after a sale had been confirmed by the probate court and the purchaser had paid the

purchase price and received his deed, it could not then be set aside by the probate court as the title had vested in the purchaser and passed out of the control of that court. But in the latter case the court at least impliedly recognized that the statute, passed after the decision in the first case, authorized the probate court to vacate such orders in proper cases, if the title had not passed beyond its jurisdiction. The application made in the present case was informal, and the amendment was made in a manner not to be commended, but as the court had power to make the order which it did make, these were irregularities merely which cannot be taken advantage of in a collateral proceeding like this. Having failed and refused to comply with the terms of the original order, Samdahl acquired no interest under it which could be enforced against the land or against the heirs. He acquired no interest under the amended order, for he was not the purchaser under that order. The sale made under the amended order and evidenced by the deed to Hanson was the only sale which conveyed any interest in the land, for it was the only sale authorized by the probate court in which the conditions specified by the court were complied with on the part of the purchaser.

Paying the consideration for the conveyance to Hanson, gave Samdahl no interest in the land. G. S. 1913, § 6706, and the numerous cases in which that statute has been applied. There may be circumstances under which a conveyance to a third party for a consideration paid by the husband will operate as such a fraud on the wife that a court of equity will interfere in her behalf, but no such circumstances are shown here, and the intervener's complaint makes no claim of that nature.

Samdahl was a man of means. He had a farm of 640 acres on which he resided with his family and also had a large amount of personal property. The court found that he died possessed of property of the value of at least $70,000, exclusive of that in controversy. He had the indisputable right to give money to these two daughters, and we think he had an equal right to apply it in payment for land to be conveyed to them instead of giving it to them outright.

As our conclusions accord with those of the learned trial court, the judgment is affirmed.