IN RE ESTATE OF CORNELIUS MAHONEY.
ELIZABETH VOEGELE AND ANOTHER, RESPONDENTS.[1]

November 15, 1935.

No. 30,570.

[1]Reported in 263 N. W. 465.

*Arthur Le Sueur*, for appellants.
*Thomas H. Quinn*, for respondents.

JULIUS J. OLSON, JUSTICE.

Cornelius Mahoney died testate a resident of Rice county, this state. His will was presented to and filed in the probate court of that county on April 28, 1926. Due order for hearing and citation on its admission to probate was issued and served. A son and daughter of decedent filed notice of contest. The hearing on the contest of the will and its admission to probate was heard May 28. At that hearing the son Cornelius Mahoney, Jr. appeared in person and by his attorney. The sons William Mahoney and Daniel J. Mahoney and daughter Agnes Downing also appeared and were represented by counsel. They were all aligned as contestants. The daughters Mary Long and Abbie Mahoney appeared in support of the will, and they too were represented by counsel. On July 10 the court dismissed the contest, admitted the will to probate, and issued letters testamentary to Mary Long, she having been named executrix in the will. On that day, too, there was filed with the court a stipulation of settlement entered into by the heirs of decedent. On July 22 the executrix filed an inventory and appraisal showing a total value of real and personal estate of $35,488.93 (the correct amount should be $35,473.93, but there is an obvious

error of $15 in adding the various items), consisting of homestead appraised at $5,400, other real estate (farm lands) $25,400, and personal property $4,673.93. Of the personal property so inventoried and appraised, $3,348.93 was cash and $900 liberty bonds. On December 22, 1927, the executrix filed her petition for license to mortgage certain lands described in the petition. On January 4, 1928, Cornelius Mahoney, Jr. filed objections to the granting of such license. The hearing upon that petition took place March 16. Three attorneys appeared for as many individuals and groups of the Mahoney heirs in opposition to the granting thereof. On April 10 the court made its order granting the petition and overruled the objections of those opposing its issuance. The court found these significant facts:

"That it is necessary and expedient, and for the best interest of said estate of said Cornelius Mahoney, deceased, and of all persons interested thereon, that the real estate of said decedent hereinafter described be mortgaged for the following reasons and for the following purposes, to-wit: To pay the expenses of administration of said estate." The executrix by that order was required to "take, subscribe and file in this court the oath in such case required by law, and execute and file in this court her bond, with sufficient sureties, to the judge of this court and his successors in office, in the penal sum of Two Thousand Dollars, conditioned as required by law. * * * That the said real estate shall not be mortgaged hereunder for more than the aggregate maximum amount of Two Thousand Dollars and that the amount for which said real estate shall be mortgaged shall not bear interest at a rate to exceed the maximum of six per cent per annum. * * * The proceeds of the mortgage of said lands and the money acquired thereby shall be used for the following purposes, and none other, to-wit: To pay the expenses necessarily incurred by the representative of said estate in the due administration of said estate."

The executrix, having complied with this order, on September 20 made written report in respect of her doings in this matter, and on the same day the court made its order approving her report and

confirming the mortgage so made. On November 18, 1928, the executrix filed her final account and petitioned the court for allowance thereof and for distribution of the remaining estate. On January 31, 1929, she filed a supplemental account. Cornelius Mahoney, Jr. and wife filed objections. On February 18 several attorneys appeared for the Mahoney objectors. On February 24 the court made and filed its order allowing the final account and on the same day made and filed its final decree wherein and whereby the property of decedent was assigned and distributed to the persons thereto entitled. It is significant to note here that in the decree respecting the lands covered by the mortgage the same were assigned to the recipients thereof subject to this particular mortgage. No appeal or other review has been sought by anyone until on October 10, 1933, a period of four years, seven months, and sixteen days after the making and entry of said decree, and more than five years after the court's confirmation of the mortgage, when the present proceedings were begun. On that day counsel for the present appellants, "Cornelius Mahoney, Jr., Mary Mahoney, also known as Minnie Mahoney, his wife, Cornelius Mahoney, Jr. as the guardian of Cornelius Mahoney III, John Mahoney II, and Mary Mahoney II, minors, and Catherine Mahoney, in her own right, as remaindermen and heirs under the last will and testament of Cornelius Mahoney, deceased," filed their petition alleging various defects in the probate proceedings and praying "that the final account and the interlocutory accounts of said Mary Long, executrix, be re-examined and set aside so far as the same are unlawful, and that the final decree be set aside and the final account examined and the proper determination made of the accounts which should be allowed, and that upon the opening of the said final decree, the order allowing the petitioners [petition] of Mary Long to mortgage said estate, or any portion thereof, be set aside. That the confirmation of the mortgaging, if such there be in the files and records of this court, be also set aside as a fraud upon the rights of your petitioners herein, this petition being joint and several."

On January 30, 1934, Judge Shields of the probate court in an order reviewing all the proceedings had before him found that

"there are no errors to correct, no mistake of fact to modify or no amendments to the record needed to express the correct and clear judgment of this court." As conclusions of law the court ordered "that the prayer of the petitioners * * * in said matter be and the same is hereby denied." Judge Shields had presided during the entire time of these proceedings. Petitioners thereafter appealed to the district court of Rice county. That court duly heard and considered all the evidence adduced, which consisted almost wholly of the probate proceedings. The only other evidence introduced consisted of the testimony of the clerk of the probate court, who identified the probate records introduced in evidence, and that of the grandson, James Cornelius Mahoney, whose testimony is limited to the statement that in the year 1928 he and some of the other Mahoneys were living upon a farm belonging to the estate. The district court made findings in all things sustaining the order of the probate judge. By appropriate appeal the matter is brought here for review.

Appellants at the very outset in their brief succinctly and accurately state the issue here for review thus: "This action involves the legality of a final order entered February 24, 1929, distributing the estate of Cornelius Mahoney, deceased." To bring about a reversal of the order below several assignments of error are urged, but after all these relate back and are limited to the main issue quoted above.

1. It is first asserted as a ground for reversal that there are irregularities in the proceedings had before the probate court compelling it to grant the relief sought. In substance this is the claim: That because a warrant to appraisers was issued for the purpose of having lands appraised before sale, that an oath was entered and filed in the probate court by the appraisers named in the warrant and that the appraisers signed a blank form of appraisal describing certain lands but inserting no amount in respect of values, that therefore these proceedings are faulty to such extent as to leave the same open to attack at this late day. A sufficient answer thereto is the fact that no sale was ever made, and no petition to sell appears in the record. Nor, as far as we can learn from the record

before us, was any sale ever sought or contemplated. Of course these objections can be of no avail to appellants. If there is error . it is obviously without prejudice. It should be noted too that no appraisal is required by the statute where a mortgage is to be placed upon estate property. Appraisal is necessary only in the event of sale. 2 Mason Minn. St. 1927, §§ 8841-8844.

2. Appellants' next attack is directed against the sufficiency of Mrs. Long's petition for license to mortgage certain lands. From the petition it appears that it was prepared upon a printed blank. It is shown therein that petitioner had come into possession of personal property of the value of $4,689.93. (This accords with the general inventory.) In the printed form a space was reserved for a statement of what disposition the representative had made of the property, what portion remained, and the value of such remainder. These spaces were left blank. But the petition avers that the expense of administration "is and will be * * * approximately $2,300" and that the outstanding and unpaid debts against the estate are "approximately $1,000." The lands proposed to be mortgaged are fully described, and the names, ages, and residences "of all the persons interested" in the real estate to be mortgaged are shown. The reason for making the desired loan is stated to be "to obtain sufficient money to close the estate." As has already been related, objections to the granting of the license to mortgage were interposed while the matter was under consideration by the probate court in the early part of 1928. Able counsel represented objectors, and we cannot assume that they overlooked any valid basis for the objections interposed. The court overruled these and issued the license. There is no suggestion that the court went beyond its jurisdictional authority in so doing. No review was sought. The mortgage was placed. The money came into the hands of the representative and was accounted for in her final account. In addition thereto, the court, upon the institution of the present proceedings, after fully reviewing what had occurred in the past, refused to reconsider what it had formerly determined. The objection now made and the remedy now sought are obviously unavailable. At most, even if error were shown, the same could not be

now urged as a basis for reversal here. But, as we have stated, error is not shown. The conflicting claims, such as were or could be presented to the probate court at the time this matter was pending before it, were resolved adversely to the then raised objections and contentions of the warring factions.

Probate proceedings are *in rem,* the *res* being the property of the deceased owner. Dunnell, Minn. Prob. Law, § 614. Similarly, a proceeding for the probate of a will is *in rem.* As such, constructive notice is sufficient, and a decree admitting the will to probate is binding on everyone interested in the estate, whether they appear at the hearing or not and whether they have actual notice or not. *Id.* § 240. The jurisdiction of the probate court continues until the close of the proceedings. It is one continuous matter. *Id.* §§ 241, 617. When the final decree issues, the rights of the parties to take the property of the decedent is therein and thereby determined, and even the will cannot be used to impeach the decree. *Id.* § 1072. The effect of the decree is to transfer title to the personalty and the right of possession of the real estate from the representative to the legatees, devisees, or heirs. The property thereafter is no longer a part of the estate of decedent but becomes the property of the distributees with full right of control and possession. *Id.* § 1073. The statutes are to be liberally construed so as to uphold titles derived from sales made in probate proceedings; hence substantial compliance only is required. *Id.* § 993. When a probate court has made an order for the sale of real property of an estate and it has been accordingly sold, the sale confirmed by the court and a deed executed to the purchaser as directed by the order of confirmation, and the administrator discharged, the matter is out of the jurisdiction of the probate court, and it cannot entertain an application for review and set aside sale proceedings. *Id.* § 996, and cases cited under note 53. Thus, in State ex rel. Prendergast v. Probate Court, 19 Minn. 85 (117), it was held that a petition for license to sell real estate need not state the debts of the estate in detail, a statement of the aggregate being sufficient. That case also holds that where the probate court had made an order of confirmation of sale of real estate its authority

over the subject matter of the sale was at an end and it could not afterwards vacate the sale. The same result was reached in State ex rel. Lindekugel v. Probate Court, 33 Minn. 94, 22 N. W. 10. There a writ of prohibition issued out of this court to prevent the probate court from entertaining a proceeding in many respects similar to what appellants here seek to accomplish. In Kurtz v. St. P. & D. R. Co. 65 Minn. 60, 67 N. W. 808, it was held that 23 years having elapsed after the confirmation of the sale made by guardian after executing guardian's deed, the action of the probate court in assuming to amend all of its files and records with relation thereto was without jurisdiction and void. In Smith v. Barr, 83 Minn. 354, 356, 86 N. W. 342, 343, the court said with regard to a defective petition for license to sell:

"The petition was formally defective in several particulars, but we need not discuss them, for the administrator was licensed to make the sale by the probate court having jurisdiction and which appointed him. Therefore it was immaterial in this case whether there was or was not a proper petition for the license to sell." (Citing cases.)

In the instant case there is no proof whatever of fraud or concealment. The jurisdiction of the probate court in the proceedings had is and cannot be questioned. The most that can be claimed for appellants is that there may be some irregularities, but there is absolutely nothing indicating fraud, concealment, or lack of jurisdiction. Bearing in mind that there is nothing in the record before us questioning the legality and validity of the probate proceedings had excepting only such imperfections as appear on the face of the criticized records, we think it must necessarily follow that the trial court correctly disposed of the case. Such irregularities as here appear can in no event be said to be fatal defects. Hayes-Lucas Lbr. Co. v. Johnson, 172 Minn. 504, 215 N. W. 857.

Affirmed.