ELIZABETH VOEGELE v. CORNELIUS MAHONEY, III, AND OTHERS.[1]

May 23, 1952.

No. 35,732.

[1]Reported in 54 N. W. (2d) 15.

44

Perry S. Johnson and A. C. Smith, Jr., for appellants.
Urban J. Steimann, for respondent.

KNUTSON, JUSTICE.

Appeal from an order denying defendants' alternative motion for amended findings, conclusions of law, and order for judgment in their favor or for a new trial.

Many of the facts are not in dispute. Cornelius Mahoney, grandfather of defendants, died testate on April 23, 1926. Objections were filed to the allowance of his will, but after a contested hearing it was admitted to probate. Mary Long, a daughter, was named executrix, and Thomas H. Quinn, an attorney at law practicing at Faribault, acted as her attorney. The contestants were represented by other counsel.

The estate of Cornelius Mahoney consisted of 352 acres of land in Rice county and some personal property. Of the land, about 110 acres were located in Wells township and 242 acres in Shieldsville township. When the time came to close the estate, it was found that there was insufficient money to do so. License to mortgage the real estate was obtained from the probate court on April 10, 1928, and, pursuant thereto, all of the land was mortgaged to Farmers & Merchants State Bank of Faribault to secure a loan of $2,000. The mortgage, which was duly approved by the probate court, is dated October 1, 1928. It was assigned by the bank to plaintiff for a valid consideration on December 31, 1929.

The final decree in the estate was entered on February 24, 1929, assigning the land to the devisees under the will, subject to the mortgage. By his will, Cornelius Mahoney created several life estates, and defendants were remaindermen in undivided shares, subject to such life estates.

Some four and one-half years after the entry of the final decree, proceedings were commenced by the father of the present defendants, who were then minors, as their guardian, and also in his own right, challenging the validity of the mortgage, as well as the final decree. The petition to set aside the final decree was denied by the probate court and, on appeal to the district court, was affirmed. On appeal to this court, we affirmed the district court. In re Estate of Mahoney, 195 Minn. 431, 263 N. W. 465. The validity of the mortgage can therefore no longer be in doubt.

Abbie Mahoney, as guardian of the estate of her mother, who was the surviving spouse of Cornelius Mahoney and owner of the first life estate in the property, paid the interest on the mortgage for 1929 and 1930. She failed and refused to pay the interest due April 4, 1931, because she "was short of funds."

On April 9, 1931, on account of default in the payment of interest, plaintiff gave Thomas H. Quinn a power of attorney to foreclose the mortgage. Quinn, as has been mentioned above, had theretofore acted as attorney for the executrix of the will of Cornelius Mahoney and, from time to time, had advised Abbie Mahoney in connection with her guardianship of the estate of her mother, the surviving spouse of Cornelius Mahoney. At the time that plaintiff gave him a power of attorney to foreclose the mortgage, however, he was not acting as attorney for any of the Mahoney heirs. The mortgage was thereafter foreclosed and bid in by plaintiff on June 5, 1931, for $2,644.34, which represented the amount then in default.

After the time for redemption had expired, some of the Mahoney heirs, including the father of defendants, with whom defendants were then living, continued to occupy the land. In order to get possession, plaintiff commenced an action in the district court to

eject the occupants, and judgment in her favor was entered on June 22, 1933. Pursuant to the judgment so entered, the sheriff moved the family off the farm in July 1933. Some of the Mahoney heirs persisted in cutting timber on the land, and, to restrain such action, plaintiff procured a restraining order and an injunction from the district court on June 22, 1933.

Since the removal of the Mahoney family in July 1933, plaintiff has been in possession of the land. She has paid the taxes thereon and has made improvements. During 1933, attorney Quinn commenced an action in her behalf to quiet title to the part of the land located in Wells township. Plaintiff was under the impression that the action included the land in Shieldsville township as well. The land in Wells township has long since been sold by plaintiff.

On December 27, 1949, plaintiff entered into a contract for deed to sell the land in Shieldsville township. It then appeared that it would be advisable to bring an action to quiet title to this land. Such action was accordingly commenced, and defendants, claiming to be the owners of undivided shares in the land, interposed their joint and separate answer setting up the claims which will hereinafter be discussed.

From the time when plaintiff first obtained possession of the land in 1933 until the commencement of this action, none of the Mahoney heirs made any claim of ownership to the property. Defendant Catherine Bauer (nee Mahoney) was born October 31, 1914; defendant Cornelius Mahoney, III, was born February 29, 1916; defendant John Mahoney was born December 31, 1918; and defendant Mary Mahoney was born February 14, 1923. At the time plaintiff obtained possession of the real estate involved, all of the defendants were minors, but at the time this action was commenced they were respectively 35, 34, 31, and 27 years of age.

While defendants' assignments of error are stated in general terms, their contentions are based largely on the following claims: (1) That the land involved was worth so much more than the amount of the mortgage security that there has been an unconscionable enrichment on the part of plaintiff and that they should

therefore be declared to be the owners of undivided interests in the land which was devised to them under the will of their grandfather; (2) that plaintiff and attorney Quinn entered into a conspiracy to defraud defendants of their share in the estate at the time when they were minors, that they did not discover the fraud until this action was commenced, and hence that the statutory period was tolled and had not run against them; and (3) that by reason of the facts in this case a constructive trust has arisen in favor of defendants.

■ Defendants first contend that the land covered by this mortgage was worth so much more than the amount due on the mortgage debt that their interests should be set aside to them, in spite of the mortgage, because of the fact that plaintiff has been unconscionably enriched at their expense.

The witnesses differ as to the value of the land at the time the mortgage was foreclosed. Defendants' witnesses testified that the land was then worth from $78 to $98 per acre. Plaintiff's witnesses, on the other hand, testified that the land was then worth from $20 to $25 per acre. That it was worth more than the amount due on the mortgage cannot well be denied. The farm involved consisted of much land which was not under cultivation. There were then about 40 acres of the farm under cultivation. The buildings were run down. It is a matter of common knowledge that at the time this mortgage was executed and at the time of the foreclosure thereof our country was in the throes of a serious depression. Farm land had depreciated to such an extent that there was hardly any market for it. It was difficult to borrow money on land. So many farmers were losing their land by foreclosure that in 1933 our legislature was moved to declare that a public economic emergency existed, and by L. 1933, c. 339, the legislature enacted a mortgage moratorium law giving the courts power to extend the time for redemption on certain conditions. While the act did not apply to the foreclosure now under consideration, for the reason that the time for redemption had expired before the enactment of the law, it does illustrate the effect of the then

existing depression on all real estate values. However, even if we assume that the value of the land far exceeded the security of the mortgage, this alone would not vitiate the mortgage. Furthermore, the court's decision in this case is based on a finding that plaintiff has acquired title by adverse possession. It is clear, at least, that from the time plaintiff acquired possession in 1933 by her action in ejectment she was in possession under a claim of ownership hostile to that of the former owners. Irrespective of the validity of the foreclosure proceeding, she had acquired title before the commencement of this action. That she intended to appropriate and use the land as her own, to the exclusion of all others, from the time she evicted the Mahoney heirs, who had been in possession, cannot well be doubted. Even if the original entry had been tortious, she would have acquired title. Mattson v. Warner, 115 Minn. 520, 132 N. W. 1127; Rupley v. Fraser, 132 Minn. 311, 156 N. W. 350; Cain v. Highland Company, 134 Minn. 430, 159 N. W. 830, 872; Skala v. Lindbeck, 171 Minn. 410, 214 N. W. 271; Naporra v. Weckwerth, 178 Minn. 203, 226 N. W. 569, 65 A. L. R. 124.

It would be difficult to imagine a more positive claim of ownership and a right to possession than an action in court to eject those against whom ownership and the right to possession were asserted. Here, all the elements essential to the acquisition of title by adverse possession are present, and the evidence amply sustains the finding of the trial court to that effect.

■ Nor will the minority of defendants at the time plaintiff went into possession prevent the running of the period of limitation for bringing an action to contest plaintiff's title under our statute.

Under M. S. A. 541.02, an action for the recovery of real property held adversely must be commenced within 15 years after the claimant·was seized or possessed of the land. If, however, when the cause of action accrues, the claimant is an infant, the running of the period of limitation is suspended for not more than

one year after the disability ceases under § 541.15. Section 541.15, as far as material, reads:

"Any of the following grounds of disability, existing at the time when a cause of action accrued, shall suspend the running of the period of limitation until the same is removed; provided that such period, except in the case of infancy, shall not be extended for more than five years, nor in any case for more than one year after the disability ceases:

"(1) That the plaintiff is within the age of 21 years;"

Catherine Bauer attained the age of 21 years during the year 1935; Cornelius Mahoney, III, in 1937; John Mahoney in 1939; and Mary Mahoney in 1944. Consequently, their disability did not exist at the time this action was commenced, nor had it existed for more than one year prior thereto. The statute tolling the running of the period of limitation is therefore inapplicable to this case. See, Backus v. Burke, 63 Minn. 272, 65 N. W. 459; Pearson v. Hasty, 192 Okl. 425, 137 P. (2d) 545, 147 A. L. R. 232.

■ Defendants next contend that plaintiff fraudulently entered into a conspiracy with her attorney, Thomas H. Quinn, calculated to defeat the interest of defendants, who were then minors, and that they did not discover the fraud until this action was commenced; hence, that they still have a right to maintain the action. The law is well settled that, in the absence of fraud, ignorance of the existence of a cause of action does not toll the statute of limitations. It is equally well settled that the statute does not run against actions for fraud until the fraud is discovered. Schmucking v. Mayo, 183 Minn. 37, 235 N. W. 633.

■ Defendants' contention that plaintiff and attorney Quinn conspired to defraud them of their interest in the land is predicated largely on letters written by Quinn to his former client, Abbie Mahoney, who was then the guardian of Catherine Mahoney, the surviving spouse of defendants' grandfather. Principally, defendants' contention is based upon a letter written April 20, 1931, to Abbie Mahoney, in which Quinn said:

"Abbie Mahoney,
1st Ave. N. W.,
Faribault, Minn.

"Dear Madam:—In re: Mahoney-Voegele Mortgage Foreclosure.

"Pursuant to our conversation relative to Miss Voegele's mortgage foreclosure, I write you this letter.

"I am attorney for Miss Voegele in foreclosing this mortgage and her position is that she does not want the farms or the land, but merely wants your money. However, in the present condition of the title of these lands as made by your father's rather peculiar will and the condition generally, I am satisfied that unless this title is simplified and gotten around in shape through this foreclosure, which appears to be the only means by which it can be done, none of you will ever get anything out of the places.

"As far as you are concerned, if the foreclosure goes through, undoubtedly you could buy the certificate from Miss Voegele although I think you should look into it as to whether or not it would then be advisable to buy in your own name inasmuch as you are a tenant in common on some of the remaining property. However, this foreclosure and sale, if there is no redemption from it, would result in an absolutely good title to the mortgage certificate holder and in that way you would be getting away from all the life-estates and other ramifications which your father created in his will, with no doubt very good intentions, but on account of the depression in the value of farm lands, put the title to the places in such shape today that no one can do anything with them and, as I stated hereinbefore, I am satisfied that you would probably all eventually loose [*sic*] the places and never get anything to speak of out of them.

"You could in the meantime, of course, look around and see if you could get someone to finance you in such a deal. I am going to write to the other heirs and advise them thoroughly of the situation, so that all of them will know exactly what is going on. However, keep in mind that Miss Voegele desires nothing but the money which is due her.

"Also, the reason why she can foreclose for the whole amount is that the mortgage contains the provision which gives her the right to foreclose for the whole amount and to declare all of it due just as soon as default in any of the conditions has been made and default, of course, has been made at the present time in the payment of the interest, so in order to redeem now and stop the foreclosure it would be necessary for you to pay the principal, interest and probably any taxes against the place.

"Yours very truly,"

Other letters were written to the Mahoney heirs. On October 13, 1931, for instance, Quinn wrote the father of defendants as follows:

"Your sister Abbie was in with a prospective buyer for one of the farms. There is no way that I know of by which a sale could be made unless you and Abbie get together and you or someone else is appointed guardian of your children. Then Abbie as guardian of your mother and the guardian of your children and you and her as individuals would have to join in a deed and of course the first money realized would have to be paid upon the mortgage. You had better either do this and get in touch with her and work it out or you had better make some provision for redeeming, inasmuch as after the year is up Miss Voegele will own the farm otherwise."

There are many other letters in the record of a similar import. It is clear that Quinn advised all the heirs what the result would be if they did not redeem or if they did not repurchase the land from plaintiff after the time for redemption had expired. The record is replete with evidence to show that plaintiff was willing to reconvey to the Mahoney heirs as late as 1934 for the amount she had invested in the property. While Quinn kept all the interested parties advised of the result of the foreclosure, it may be true that he did not write specifically to defendants, who were then minors; but it cannot be assumed that both the father of the minors and their aunt, who at all times had knowledge of the

result which would follow a failure to redeem or repurchase the land, intended to defeat the minors of their interest in the land. A careful examination of the entire record fails to disclose any evidence of fraud or overreaching on the part of either plaintiff or Quinn. To the contrary, it must be said that plaintiff showed a desire to reconvey to the Mahoney heirs even after the time for redemption had expired; in fact, it appears that efforts were made to raise money with which to repurchase the land, but that they were not successful.

■ We fail to find any evidence in the record upon which a constructive trust in favor of defendants could arise. Viewing the situation retrospectively, the most that can be said is that the investment made by plaintiff has turned out to be a profitable one because of the inflation in the values of real estate since the time when this mortgage was foreclosed.

Affirmed.

