## IN RE ESTATE OF ROSE ANN SIVERT.
## PAUL SEVERSON v. ALFRED ENGBARTH.

135 N. W. (2d) 205.

May 7, 1965—No. 39,861.

*Blethen, Ogle, Gage & Krause* and *Bailey W. Blethen,* for appellant. *Glenn Catlin* and *Russell Voorhees,* for respondent.

KNUTSON, CHIEF JUSTICE.

This is an appeal from a summary judgment entered pursuant to an order of the district court.

[6]See, Kray v. Muggli, 84 Minn. 90, 86 N. W. 882, 54 L. R. A. 473.

For the purposes of this appeal only, these facts must be taken to be true. The domiciliary estate of one Rose Ann Sivert is being administered in the probate court of Brookings County, South Dakota. William Nichols is one of the executors of the estate in South Dakota. Paul Severson is the administrator with the will annexed in an ancillary proceeding in Minnesota. On July 31, 1962, the probate court of Lincoln County, Minnesota, granted Severson an order of license to sell lands of the estate in this state, including a farm in Pipestone County containing 155.40 acres.

Nichols, in addition to being one of the executors of the estate in South Dakota, is a licensed real estate broker in Minnesota. He began negotiations for the sale of the Pipestone County farm to Melvin Mortenson, in which he authorized one Alfred Engbarth to act as his agent. On November 30, 1962, Engbarth entered into a contract for deed with Mortenson as vendee, in which Engbarth designated himself as agent for Nichols, representative of the estate, and under which Mortenson agreed to pay the sum of $15,540 for the farm, on which he made a downpayment of $4,000.

On December 3, 1962, 3 days after the signing of this contract for deed, Nichols came to Severson's office and informed him that he had sold the farm for $13,175, which was its appraised value in the probate court of this state. He stated to Severson that he had sold the farm to Engbarth and asked to have the necessary papers drawn to complete the sale. No mention was made of Mortenson. At the same time, Nichols gave Engbarth's check for $1,669 to Severson as a downpayment. The check was payable to Rose Sivert Estate. As a matter of fact, Nichols and Engbarth in this deal had actually sold the farm for $2,365 more than the appraised value, none of which was known to Severson. On December 3, 1962, Engbarth gave Nichols a check for $1,162.50, representing one-half of the excess above the appraised value after deducting revenue stamps and other small items of expense.

On December 4, 1962, Severson applied to the probate court for an order confirming the sale and also requested authority to pay Nichols a 3-percent broker's commission on the amount he believed the farm had been sold for. On December 7 the court issued its order authoriz-

ing payment of such commission upon completion of the sale to Engbarth.

On January 6, 1963, Severson received a letter from Engbarth asking that the deed be made out to Mortenson. Severson informed Engbarth that the report of sale was already made out and showed that the sale was to be made to him and that it would be best to complete it that way, and Engbarth could then sell the property to Mortenson. In the letter Engbarth did not inform Severson that the sale had already been made to Mortenson on November 30, 1962.

On January 8, 1963, the probate court issued its order confirming the sale to Engbarth for $13,175. Certified copies of the orders authorizing the sale and confirming it were recorded on January 11, 1963.

Engbarth asserts that on January 10, 1963, Severson prepared a probate deed conveying the property to him. Severson contends that the deed was never delivered.

The first intimation of the sale by Nichols and Engbarth to Mortenson reached Severson when he received a letter from an attorney in Pipestone stating that he had in his office for examination an abstract of title on the property involved and a contract for deed showing that the property was being sold to Mortenson but that the order confirmed the sale to Engbarth. Thereafter, Severson wrote the attorney that he had no knowledge that the property had been resold by Engbarth to Mortenson and that he had never had anything to do with Mortenson, and that the request that the deed run directly to Mortenson had been made too late as the report of sale was on file and the order confirming it had been issued by the probate court.

On February 12, 1963, Mortenson came to Severson's office and exhibited to him the contract for deed signed on November 30, 1962. After conferences with the parties and the probate court, Severson, on April 9, 1963, petitioned the probate court for an order vacating the orders confirming the sale and authorizing payment of a broker's commission to Nichols. On April 9, 1963, the judge of the probate court issued an order to show cause why such relief should not be granted. A hearing was held on April 16, 1963, at the conclusion of which the judge found the above facts to be true and concluded that comple-

tion of the sale would be a fraud and a breach of trust on the judge, court, and the estate and vacated the order confirming the sale and the order authorizing payment of a commission to Nichols.

Engbarth appealed from this order to the district court and at the same time gave notice of a motion for summary judgment based on the pleadings and the record. The motion was heard on September 9, 1963, and the district court granted summary judgment on the theory that the probate court was without jurisdiction to vacate its order confirming the sale. The appeal here is from the judgment entered pursuant to such order.

The only question before us is whether the probate court, under the facts of this case, has the power to vacate an order confirming a sale of real estate.

Our case law on this subject is none too clear. In State ex rel. Prendergast v. Probate Court, 19 Minn. 85 at 92 (117 at 124), we said:

"The authority of the probate court over the subject-matter of the sale of this real estate was exhausted when it had confirmed the sale."

It should be noted, however, that in that case the probate court had not only confirmed the sale but the executor had executed and delivered a deed and the final account of the executor had been examined and allowed before a petition was submitted requesting that the order of license and all subsequent proceedings be vacated.

In In re Gragg, 32 Minn. 142, 19 N. W. 651, we held that a probate court may vacate its order or judgment procured by fraud, misrepresentation, or through surprise, or excusable inadvertence or neglect. In so doing, we said (32 Minn. 143, 19 N. W. 651):

"* * * The probate court appears to have refused to vacate the order, not upon the merits of the application, but upon the proposition that it had no power to vacate it. Whatever doubt might previously have existed as to the probate court having the power to vacate, in certain cases, its judgment or order, was removed by the sixth subdivision of Gen. St. 1878, c. 49, § 13, which provides for an appeal from 'an order vacating or refusing to vacate a previous order or judgment

made or rendered, alleged to have been procured by fraud, misrepresentation, or through surprise, or excusable inadvertence or neglect.' This subdivision was not in force when the case in State v. Probate Court of Ramsey Co., 19 Minn. 85, (117,) arose."

The power of the probate court to vacate an order was also recognized in In re Hause, 32 Minn. 155, 19 N. W. 973.

In the Gragg case, and possibly in the Hause case, this court reasoned that, inasmuch as an appeal could be taken from an order vacating or refusing to vacate a previous order or judgment, the probate court of necessity had the power to pass upon such an application in order to make it appealable.

Less than a year after the Gragg case we passed upon State ex rel. Lindekugel v. Probate Court, 33 Minn. 94, 22 N. W. 10. That case, again, involved the power of a probate court to vacate proceedings involving the sale of land. There, again, the court's order was made confirming the sale. A deed was executed and delivered to the purchaser, the final account of the administrator allowed, and he was discharged, after which a petition was filed by the widow of the deceased stating that the sale was fraudulent, illegal, and void, and praying that the order of license and the order confirming the sale be vacated. The probate court held that it had jurisdiction to hear the matter, after which an application was filed here for a writ of prohibition. After discussing the Prendergast and Gragg cases, we said (33 Minn. 96, 22 N. W. 11):

"* * * Where sale proceedings have culminated in an order confirming the sale and directing a conveyance, *and the execution of a deed accordingly,* any contest as to the legal effect and validity of the proceedings, and as to the rights thereby acquired, must be between the purchaser, who in that character has no interest in the distribution of the estate, and the representative of the estate, or heirs or devisees. The question is, then, one not of administration, but of adverse claims to the property; a question which must be determined by some other tribunal than the probate court." (Italics supplied.)

We held that the writ of prohibition should issue.

In Savela v. Erickson, 138 Minn. 93, 98, 163 N. W. 1029, 1031, we said:

"* * * It is also generally true that if a probate decree is deliberately entered into as the result of a judicial construction of the will, with no fraud and no mistake other than an erroneous construction of law, the power of the court to amend such decree is exhausted upon the expiration of the time to appeal therefrom. [Cases cited.]

"On the other hand, it is settled that if the decree was obtained by fraud or was the result of a mistake of fact, relief may be had in equity, and it is fairly inferable from what is said in the cases cited that a decree may be amended in the probate court on the same grounds. We so hold."

Citing In re Gragg, *supra,* and In re Hause, *supra,* in support of our decision, we said (138 Minn. 99, 163 N. W. 1031):

"It has been held by this court in many cases extending over many years that the probate court has power to relieve a party from a judgment procured 'through surprise, or excusable inadvertence or neglect.' "

Both parties here find comfort in Amundson v. Hanson, 150 Minn. 287, 185 N. W. 252. There the probate court confirmed a sale of real estate to one Samdahl. Thereafter, at the request of the administrator, the court changed the order to show a sale to Samdahl "as agent for Anton M. Hanson, deed to be made to Anton M. Hanson." The deed was subsequently executed and delivered to Hanson. The case involved the question of whether Samdahl's wife, by virtue of the order of confirmation, acquired an interest in the land. With respect to the finality of the order of confirmation, we said (150 Minn. 291, 185 N. W. 254):

"* * * Assuming that the order was made and subsequently changed as claimed by the intervener, the original order confirmed a sale to Samdahl and authorized a conveyance to him on compliance with the terms of the sale. *The order was conditional only and Samdahl could acquire no interest in the property until he complied with the conditions.* He did not act upon this order nor comply with its conditions.

Instead of doing so he made an application to have the sale changed from himself as purchaser to Hanson as purchaser. This was, in effect, a refusal to make the purchase as provided in the original order. Upon a proper application and showing, the court had power, at least in case of a private sale, to revoke or amend its order at any time before the purchaser had complied with its conditions *or received his deed.*" (Italics supplied.)

Respondent contends that use of the word "or" creates an alternative and that when the purchaser has done all he is required to do in compliance with the order of confirmation, *or* has received a deed, the court has exhausted its power. Appellant, on the other hand, contends that if the purchaser either fails to comply with the order or fails to receive a deed the court still retains jurisdiction over the matter. Either contention might be tenable.

In In re Estate of Mahoney, 195 Minn. 431, 437, 263 N. W. 465, 468, we said:

"* * * The statutes are to be liberally construed so as to uphold titles derived from sales made in probate proceedings; hence substantial compliance only is required. * * * When a probate court has made an order for the sale of real property of an estate and it has been accordingly sold, the sale confirmed by the court *and a deed executed* to the purchaser as directed by the order of confirmation, and the administrator discharged, the matter is out of the jurisdiction of the probate court, and it cannot entertain an application for review and set aside sale proceedings." (Italics supplied.)

We thereafter discussed State ex rel. Prendergast v. Probate Court, *supra,* and State ex rel. Lindekugel v. Probate Court, *supra,* and indicated that these cases held that where the probate court has made an order of confirmation of sale of real estate its authority over the subject matter is at an end and it could not vacate the sale. We did not mention the fact that a deed in those cases had actually been executed and delivered. In the Mahoney case we then went on to say (195 Minn. 438, 263 N. W. 468):

"In the instant case there is no proof whatever of fraud or conceal-

ment. The jurisdiction of the probate court in the proceedings had is and cannot be questioned. The most that can be claimed for appellants is that there may be some irregularities, but there is absolutely nothing indicating fraud, concealment, or lack of jurisdiction. * * * Such irregularities as here appear can in no event be said to be fatal defects."

In In re Estate of Sprain, 199 Minn. 511, 272 N. W. 779, 111 A. L. R. 1357, a sale of land by the representative was confirmed by the probate court and a deed was delivered pursuant thereto. One of the heirs thereafter petitioned the probate court to vacate the order confirming the sale. The court refused to do so and, on appeal, was affirmed by the district court. On appeal here, we affirmed, saying (199 Minn. 516, 272 N. W. 781, 111 A. L. R. 1360):

"In this case, however, the real estate in question was sold under license of the probate court, the sale was confirmed, *and a deed was executed to the purchasers* under authority of the order of confirmation. That raises the question as to whether after confirmation of a sale made in a proceeding in which the probate court had jurisdiction that court can review its action and vacate and set aside the order of confirmation and subsequent proceedings dependent thereon." (Italics supplied.)

We thereafter discussed several of the cases, including Prendergast, Lindekugel, and others, but the decision in the Sprain case seems to be placed upon the finding that at least one of the purchasers was a bona fide purchaser for value, and finally we said that (199 Minn. 518, 272 N. W. 783, 111 A. L. R. 1362) "[t]he court would be justified on the record in finding that the sale was made to persons who purchased them in good faith," and as to such purchasers we held that the proceedings must be attacked by a direct proceeding in a court of competent jurisdiction in an action in which all interested parties are joined.

It is obvious that in the above cases not only had the sale been confirmed by the probate court but a deed had actually been delivered to the purchaser. The question then arises whether the probate court's

power to vacate is the same whether a deed is delivered or not. There is good reason for distinguishing between the finality of a sale where it has gone no farther than a confirmation by the court and one where one of the indicia of title—the deed—has been executed and delivered. Thereafter the rights of third parties intervene and the desirability of upholding the finality of real estate titles comes into play, and thus there is more reason for holding that the title must be attacked, if at all, in a court of competent jurisdiction where all the parties, whether interested in the estate or not, can be brought in as litigants.

In In re Gragg, *supra,* and Savela v. Erickson, *supra,* we found support for the power of the probate court to vacate an order in the statutory provision which gives a right of appeal to the district court. The right of appeal is found in Minn. St. 525.71, which as far as material here reads:

"An appeal to the district court may be taken from any of the following orders, judgments, and decrees of the probate court:

\* \* \* \* \*

"(11) An order vacating a previous appealable order, judgment, or decree; an order refusing to vacate a previous appealable order, judgment, or decree alleged to have been procured by fraud or misrepresentation, or through surprise or excusable inadvertence or neglect."

In In re Estate of Simon, 187 Minn. 399, 246 N. W. 31, we said that the holding in Savela v. Erickson, *supra,* that such power might be based on what is now § 525.71(11) seems to be an inadvertent statement, since that statute merely authorized an appeal and is in no way a grant of power. While this statutory provision does deal only with orders from which an appeal can be taken, it is an indication of a legislative intent to grant power to make such orders. What we said in In re Estate of Simon, *supra,* might apply to the making of an unauthorized order, but it is doubtful that it could apply to the refusal to make such order. An appeal might conceivably be granted from the exercise of power which the court does not have, but it is quite another thing to grant an appeal from the refusal to make such order which contemplates the correction of an error. Certainly a statute

which permits a right of appeal from a refusal to make an order presupposes the power of the court to make the order in the first place and the possibility of error in a refusal to do so. Any other conclusion would ascribe to the legislature an intention to provide for an appeal that would be completely useless. Where the probate court refuses to make the order, if it is the law that it has no power to do so, all that was necessary was to prohibit an appeal and to make the court's action final.

In order to determine the power of the probate court, in addition to the case law to be found on the subject we must examine the statutory law. As has been shown in the holding in In re Gragg, *supra,* the statutory law then in effect—which did not provide for an appeal from an order of the probate court vacating or refusing to vacate a previous order—may well have affected the decision in State ex rel. Prendergast v. Probate Court, *supra.* We need not discuss all the changes in the statutes that have taken place over the years. They are adequately set forth in a note in 47 Minn. L. Rev. 1079. It is sufficient here to note that prior to the adoption of the 1935 Probate Code the powers of the probate court, as far as material here, were found in G. S. 1923, § 8701, which read in part:

"In addition to their general powers under the Constitution, *probate courts shall have the same powers as District Courts* in the following matters:

\* \* \* \* \*

"4. To correct, modify or amend its records to conform to the facts and to correct its final decrees so as to include therein property omitted from the same or from administration." (Italics supplied.)

The 1935 Probate Code deleted the express reference to the district courts, and the statute, Minn. St. 525.02, now reads in part:

"In addition to its general powers, the probate court shall have power:

\* \* \* \* \*

"(4) To correct, modify, or amend its records to conform to the

facts, and to correct its final decrees so as to include therein property omitted from the same or from administration."

The statute has remained the same since 1935. In discussing the changes made by the 1935 code in this respect, the Honorable Albin S. Pearson, then the probate judge of Ramsey County and a member of the committee that drafted the code, said (20 Minn. L. Rev. 707, 718):

"* * * The revisers, realizing the importance of the subsection and their inability to comprehend the full import of its provisions and of the decisions of the Minnesota Supreme Court with reference thereto, made no change whatever in the wording. While the language of this subsection appears to be perfectly clear, practically every competent and experienced lawyer knows that it does not and cannot mean what it apparently says, for no restrictions as to time or circumstances are mentioned. The case law on the subject is rather difficult to summarize."

However, notwithstanding the deletion of the reference to the district court by the 1935 code, this court has since the adoption of the code continued to equate the powers of the probate court to set aside its orders with that of the district court to set aside its final judgments. See, for instance, In re Estate of Woodworth, 207 Minn. 563, 292 N. W. 192; In re Estate of Daniel, 208 Minn. 420, 294 N. W. 465, where we rely in part on In re Gragg, *supra,* and In re Hause, *supra;* In re Estate of Showell, 209 Minn. 539, 297 N. W. 111; In re Estate of Gooch, 212 Minn. 272, 3 N. W. (2d) 494.

It therefore becomes necessary to examine the powers of the district court. Prior to the adoption of our Rules of Civil Procedure in 1952, the power of the district court was found in Minn. St. 1949, § 544.32, which as far as material reads:

"The court, * * * at any time within one year after notice thereof, in its discretion, may relieve a party from any judgment, order, or other proceeding taken against him through his mistake, inadvertence, surprise, or excusable neglect; or may, for good cause shown, modify or set aside its judgments, orders, or proceedings, * * *."

As far as here material, this statute was superseded by Rule 60.02, Rules of Civil Procedure, which reads in part:

"On motion and upon such terms as are just, the court may relieve a party or his legal representative from a final judgment (other than a divorce decree), order, or proceeding for the following reasons: (1) Mistake, inadvertence, surprise, or excusable neglect; (2) newly discovered evidence which by due diligence could not have been discovered in time to move for a new trial under Rule 59.03; (3) fraud (whether heretofore denominated intrinsic or extrinsic), misrepresentation, or other misconduct of an adverse party; * * * (6) any other reason justifying relief from the operation of the judgment."

Minn. St. 548.14 must also be considered. It reads in part:

"Any judgment obtained in a court of record by means of perjury, subornation of perjury, or any fraudulent act, practice, or representation of the prevailing party, may be set aside in an action brought for that purpose by the aggrieved party in the same judicial district within three years after the discovery by him of such perjury or fraud."

In a comment to Rule 60.02 in 3 Youngquist & Blacik, Minnesota Rules Practice, p. 357, we find the following:

"The rule permits relief by motion for fraud, whether heretofore denominated intrinsic or extrinsic. The construction of M.S.A. 548.14 limiting proceedings thereunder to extrinsic fraud will still control those proceedings. In re Estate of Jordan, 1937, 199 Minn. 53, 271 N. W. 104. Consequently any relief for intrinsic fraud must be brought under the rule within one year after the judgment, order, or proceeding was entered or taken."

Appellant contends that Rule 60.02 may be considered in determining the power of the probate court. See, Barrett v. Macdonald, 264 Minn. 560, 121 N. W. (2d) 165. Under the rule, the distinction between intrinsic and extrinsic fraud, which is discussed in In re Estate of Jordan, 199 Minn. 53, 271 N. W. 104, is eliminated except possibly as to the time within which relief can be granted. The time element is not of importance here because the order confirming the sale

was made on January 8, 1963, and the order vacating it on May 3, 1963, shortly after the alleged fraud was discovered and well within the 1-year limitation mentioned in the comment above. It seems, therefore, that, whether we look at the statute prior to the promulgation of the rule or to the rule, the right of the probate court to vacate an order for "good cause" is sufficiently broad to confer jurisdiction on the court to act here. If the facts found by the probate court can be established on a trial in the district court, it would constitute sufficient grounds to permit the court to vacate the order. It has been held that newly discovered evidence under the district court rule is "good cause." Many of the cases are collected in Holmes v. Conter, 209 Minn. 144, 295 N. W. 649. See, also, State ex rel. Klemer v. District Court, 134 Minn. 189, 158 N. W. 825, involving the right to vacate a judgment in a workmen's compensation action for newly discovered evidence.

It would seem, therefore, that the district court was in error in holding that the probate court lacked jurisdiction to vacate the order confirming the sale. An examination of the case law and the statutes leads us to the conclusion that the probate court has such power at least up to the time when the title to the land has passed out of its control. As long as the deed is not delivered, the matter is within the control of the probate court.

Apparently the district court was of the opinion that, even if a fraud had been committed by Nichols and Engbarth, the probate court could not vacate the title to the property because these individuals had nothing to do with the administration of the estate and the sale had been confirmed for the amount the land was appraised at in reliance on the representations made by the representative.

The court also indicates that there are other considerations which necessitate the decision reached, such as the involvement of innocent third parties who may have relied upon the order confirming the sale.

The most that can be said in favor of Nichols is that, irrespective of his obligations to the estate as an executor in the domiciliary proceedings, he was acting as a fiduciary in his capacity as a real estate broker. As such, he owed the utmost good faith and loyalty to his prin-

cipal. The usual rules governing principal and agent apply. 3 Dunnell, Dig. (3 ed.) § 1139. As an agent, it was his duty to disclose to his principal all the facts. Id. § 1143. If it is established on the trial that Engbarth was acting as a subagent for Nichols instead of an actual purchaser, he, too, is under the same duty to exercise the utmost good faith toward the principal. Barnett v. Block, 94 Minn. 138, 102 N. W. 390; 3 Dunnell, Dig. (3 ed.) § 1157.

As far as Mortenson is concerned, all that need be said at this point is that Severson was never informed that he was involved in the sale and never dealt with him until after it became apparent that a fraud had probably been perpetrated by Nichols and Engbarth. Whether Mortenson's rights have reached a point where they should be protected will depend on the evidence adduced at the trial. If it appears that the sale had been completed and that Mortenson was a bona fide purchaser for value, it may well be that his rights are superior to those of the representative of the estate, in which event the remedy of the representative may lie against his agent and subagent. However, those are matters that cannot be determined on a motion for summary judgment.

It might also be noted that Mortenson is not a party to this proceeding. The motion for summary judgment is based upon an affidavit by Engbarth in which he avers that he was the purchaser of the land. Whether or not he was a purchaser or a subagent of Nichols in selling the land to Mortenson remains to be determined in a trial of the case. As a matter of fact, that may well be the crucial issue to be determined.

It would seem, therefore, that what we said in In re Estate of Showell, 209 Minn. 539, 542, 297 N. W. 111, 112, is apropos here:

"The difficulty presented on this appeal is due entirely to a failure on the part of the district court to distinguish between jurisdiction and error. It annulled the probate court's order vacating its previous order on the ground of lack of jurisdiction on the part of the probate court. This was erroneous. The probate court had jurisdiction whether the showing in support of the motion to vacate was sufficient or insufficient to justify vacation of the previous order."

On appeal to the district court the case is triable de novo. Minn. St. 525.72. The court should have heard the case on the merits. There are many fact questions involved, and it follows that it was not proper under these circumstances to dispose of the case by summary judgment.

Reversed.