**United States Court of Appeals**
**FOR THE EIGHTH CIRCUIT**

_____

No. 97-1653
_____

Brittany Ann Lelm, by her mother     \*
and natural guardian, Karen Lelm,     \*
    \*
       Plaintiff-Appellant,     \*
    \*    Appeal from the United States
      v.     \*    District Court for the
    \*    District of Minnesota.
The Mayo Foundation, a Minnesota     \*
Corporation; St. Mary's Hospital,     \*
    \*
       Defendants-Appellees.     \*

_____

Submitted: November 18, 1997
Filed: February 2, 1998

_____

Before BOWMAN, LAY, and MURPHY, Circuit Judges.

_____

LAY, Circuit Judge.

In October 1986, the Mayo Clinic evaluated then thirteen-month-old Brittany Ann Lelm for a congenital hip dysplasia condition.[1]  On October 16, 1986, Mayo Clinic physicians performed surgery on Lelm to correct her dysplasia.  During the procedure, orthopedic surgeons severed the femoral artery and vein in Lelm's right leg which disrupted the blood supply to her leg and hip.  After unsuccessful attempts to repair the

---

[1]Congenital hip dysplasia occurs when the head of the long bone of the thigh (femur) becomes displaced from the hip socket (acetabulum).

severed blood vessels, the orthopedic surgeons abandoned their planned method of repairing her hip. Instead, they put the neck of her right thigh bone into her hip, securing it with a metal rod. Doctors placed Lelm in a Spica cast that covered her right leg from above the hip to almost the end of her right foot. On October 17, tests revealed a severe lack of oxygen to the leg. Vascular surgeons operated on Lelm, taking a portion of her jugular vein to repair the circulation problem. On October 18, Lelm developed complications requiring surgery, and she underwent a third operation. Lelm received treatment for her hip and leg from the Mayo Clinic and St. Mary's Hospital ("Mayo") until May 10, 1991.

On October 13, 1995, Lelm was ten years old. On that date, Lelm's mother and natural guardian filed this malpractice action on Lelm's behalf in federal district court. Mayo moved for dismissal pursuant to Federal Rule of Civil Procedure 12(b)(6), maintaining Lelm's claim was time-barred. The district court granted Mayo's motion to dismiss. Lelm v. Mayo Found., Civ. No. 3-95-946, slip op. at 12 (D. Minn. Jan. 30, 1997). The court held Lelm's cause of action accrued on October 16 and 17, 1986, and the running of the Minnesota statute of limitations commenced on October 17, 1986. Id. The court said the applicable statutes of limitation required Lelm to file her medical negligence claim within seven years following accrual. Id. The court held Lelm's action time-barred because Lelm filed her action nearly nine years after accrual. Id.

Lelm appeals. The precise issue before us is whether § 541.15 tolls the period of limitation applicable to Lelm's claim for a maximum of seven years, after which the regular two-year statute of limitations begins to run, or alternatively, as the district court held, whether § 541.15 prescribes a maximum period of seven years in which the suit can be brought. We vacate the order of dismissal.

A.  Applicable Statute of Limitations Period under § 541.15

In the State of Minnesota, all actions against physicians, surgeons, or other health care professionals must be commenced within two years after the cause of action accrues.  See Minn. Stat. § 541.01, 541.07(1); Gulley v. Mayo Found., 886 F.2d 161, 163 (8th Cir. 1989).  However, when a plaintiff is under a disability such as infancy, Minnesota Statutes § 541.15 suspends the period of limitation for a certain amount of time. Section 541.15 states in relevant part:

> (a) Except as provided in paragraph (b), any of the following grounds of disability, existing at the time when a cause of action accrued or arising anytime during the period of limitation, shall suspend the running of the period of limitation until the same is removed; provided that such period, except in the case of infancy, shall not be extended for more than five years, nor in any case for more than one year after the disability ceases:
>
> (1) that the plaintiff is within the age of 18 years;
>
> (2) the plaintiff's insanity;
>
> (3) is an alien and the subject or citizen of a country at war with the United States;
>
> (4) when the beginning of the action is stayed by injunction or by statutory prohibition.
>
> * * *
>
> (b) In actions alleging malpractice, error, mistake, or failure to cure, whether based on contract or tort, against a health care provider, the ground of disability specified in paragraph (a), clause (1), suspends the period of limitation until the disability is removed.  The suspension may not be extended for more than seven years, or for more than one year after the disability ceases.

Minn. Stat. § 541.15.[2]

The district court dismissed Lelm's action on the grounds that § 541.15 provided Lelm a maximum of seven years to file her claim, and thus, her claim was time-barred. In reaching its decision, the district court relied in part upon the Minnesota Court of Appeals' decision in LaVan v. Community Clinic, 425 N.W.2d 842 (Minn. Ct. App. 1988). In LaVan, the parents of a minor child brought a medical malpractice action on behalf of the child in 1987, alleging that sixteen years earlier, in 1971, defendants (a hospital and a clinic) provided negligent labor and delivery care. LaVan 425 N.W.2d at 843-44. The issue before the LaVan court was whether the 1986 amendments to § 541.15 applied retroactively. Id. at 844. With respect to the issue of retroactivity, the LaVan court stated:

> If it applies prospectively, the claim has not expired because [the plaintiff] has not yet reached age 18, the age at which her minority would cease under the prior statute. If it applies retroactively, her claim would be barred because the claim would have expired in 1978, seven years after the date of the alleged malpractice.

---

[2]The current language of § 541.15 is a result of a 1986 amendment. Prior to the amendment, § 541.15 stated in relevant part:

> Any of the following grounds of disability, existing at the time when a cause of action accrued or arising anytime during the period of limitation, shall suspend the running of the period of limitation until the same is removed; provided that such period, except in the case of infancy, shall not be extended for more than five years, nor in any case for more than one year after the disability ceases:
>
> (1) That the plaintiff is within the age of 18 years[.] . . .

Minn. Stat. § 541.15 (1984).

Id. (emphasis added).  The <u>LaVan</u> court then reviewed the legislative intent of the amendment and the circumstances surrounding its enactment, <u>id.</u> at 844-47, concluding the amendment applied retroactively.  <u>Id.</u> at 847.  The court further stated:

> The statute provides alternate ways of determining the maximum length of time the limitations period may be tolled: 'The suspension may not be extended for more than seven years, or for more than one year after the disability ceases[.]'  In this case, the seven-year period has run.  We do not reach the alternate possibility.

<u>LaVan</u> 425 N.W.2d at 847 (citation omitted).

We believe the issue of whether § 541.15 provides a seven-year or nine-year statute of limitations was of no import to the decision in <u>LaVan</u>. Once the court decided the amendments to § 541.15 applied retroactively, the <u>LaVan</u> plaintiffs' sixteen-year-old claim was time-barred.[3]  This was true regardless of whether the court held the maximum period of limitations for the claim was seven years or nine years.  <u>LaVan</u>, 425 N.W.2d 843-44.  Thus, the <u>LaVan</u> court's remarks interpreting § 541.15 are dicta.  These remarks do not create a rule of law.[4]  <u>See</u> <u>State v. Rainer</u>, 258 Minn. 168, 177-78, 103 N.W.2d 389, 396 (Minn. 1960); <u>see also</u> <u>Commissioner v. Estate of Bosch</u>, 387 U.S. 456, 465 (1967) (in diversity cases, while inferior state court rulings

---

[3]If the <u>LaVan</u> court had concluded the amendments did not apply retroactively, the plaintiffs' claim was timely.

[4]We further note that in <u>LaVan</u>, the defendants limited their arguments to the issue of the retroactive application of § 541.15.  In their trial court memoranda supporting their motion to dismiss, the defendants stated that § 541.15 tolled the statute of limitations for a maximum of seven years, after which the normal two-year statute of limitations would begin to run.  <u>See</u> Appellant's App. at 56-61 (reprinting <u>LaVan</u> defendants' relevant trial court memoranda).  In its decision, the <u>LaVan</u> trial court took the same position.  <u>See</u> Appellant's App. at 62-67 (reprinting <u>LaVan</u> trial court memorandum opinion).

should be attributed some weight, those rulings are not controlling where the state's highest court has not spoken on the point); <u>Willis v. County of Sherburne</u>, 555 N.W.2d 277, 282 (Minn. 1996) (opinion of the Minnesota Court of Appeals does not represent a definitive statement of the law of Minnesota until adopted by the Minnesota Supreme Court).

The district court said <u>LaVan</u> provided a reasonable reading of the plain language of § 541.15. <u>Lelm v. Mayo Found.</u>, Civ. No. 3-95-946, slip op. at 7 (D. Minn. Jan. 30, 1997). The district court then compared § 541(a) and § 541.15(b), noting § 541.15(b) did not explicitly state the disability of infancy suspends the running of the period until the disability is removed. <u>Id.</u> at 8. The district court reasoned that § 541.15(b) only "suspends the period of limitation," and "[s]hould the legislature have intended that paragraph (b) suspend the 'running' of the period of limitations it clearly knew how to draft such language." <u>Id.</u> The district court's analysis is a reasonable interpretation of § 541.15(b).

Yet, it is clear that § 541.15(a) contains words of repose, which specify a presumptive number of years after which an action cannot be brought. <u>See</u> <u>Hodder v. Goodyear Tire & Rubber Co.</u>, 426 N.W.2d 826, 830 (Minn. 1988). In § 541.15(a), the statute explicitly states the limitations period (except in the case of infancy) "shall not be <u>extended</u> for more than five years, nor in any case for more than one year after the disability ceases." Minn. Stat. § 541.15(a) (emphasis added). In drafting paragraph (b) of § 541.15, the legislature used different phraseology, and it stated the ground of disability in paragraph (a), clause (1) (infancy) "<u>suspends</u> the period of limitation until the disability is removed. The

-6-

<u>suspension</u> may not be extended for more than seven years. . . ."[5] (emphasis added). Thus, it is also reasonable to conclude that had the

———————————

[5]Section 541.15(b) also reads "the suspension may not be extended . . . for more than one year after the disability ceases." This "one year" clause is not before us. Whether this is independent of the first clause (the "seven years" clause) should be left to a future case where the factual context requires analysis of it.

The district court concluded that to interpret the "seven years" clause as providing Lelm with two additional years to commence an action under § 541.07, yet to deny two additional years to a plaintiff under the "one year clause," would be inconsistent and would require anomalous treatment of parallel clauses. <u>Lelm v. Mayo Found.</u>, Civ. No. 3-95-946, slip op. at 7-8 (D. Minn. Jan. 30, 1997). Yet, the "one year" clause must be read with the final clause of the preceding sentence, to wit, infancy "suspends the period of limitation until the disability is removed." Thus, the concluding sentence of § 541.15(b), although containing parallel clauses, can be reasonably applied to different factual scenarios: (1) where the end of the seven-year suspension falls within the plaintiff's infancy and the plaintiff has two or more years left before reaching the age of eighteen; and (2) where after suspension of seven years or less, one additional year beyond the age of eighteen has expired.

We offer the above discussion, not to resolve the ambiguity, but simply to demonstrate it is not necessarily anomalous to construe the two parallel clauses differently. Although the "one year" clause and "seven years" clause appear side by side in the same sentence, they are obviously intended to address two different situations.

-7-

legislature intended § 541.15(b) to operate like § 541.15(a), it knew how to draft language that would reflect that intent.

Further, when interpreting Minnesota Statutes, courts are to construe words and phrases according to their common and approved usage. <u>See</u> Minn. Stat. § 645.08 (listing canons of construction). The words of § 541.15(b) at issue in this case are the words "suspend" and "suspension." To "suspend" is to cause to stop temporarily. Webster's Ninth New Collegiate Dictionary 1189 (1990). A "suspension" is the state or period of being suspended. <u>See</u> <u>id.</u> If the "period of limitation" is stopped or suspended, it cannot also be running. Thus, another reasonable interpretation of the statute would be that in the case of a minor's medical malpractice action, § 541.15(b)

suspends the running of the two-year period of limitations in § 541.07 for up to seven years, and after seven years, the two-year period of limitations begins to run.

However, it would appear that this interpretation of § 541.15(b) on its face is no more reasonable than that of the district judge. Thus, we think it clear the statute is ambiguous. See State by Beaulieu v. RSJ, Inc., 552 N.W.2d 695, 701 (Minn. 1996) (a statute is ambiguous if it is reasonably susceptible to more than one interpretation); Phelps v. Commonwealth Land Title Ins. Co., 537 N.W.2d 271, 274 (Minn. 1995) (same). In Minnesota, it is well-settled that where a statute is ambiguous, a court may ascertain legislative intent by looking at the statute's legislative history. See Minn. Stat. § 645.16.

B. Legislative History of § 541.15(b)

Courts may examine the materials that constitute legislative history, including legislative committee tapes, when the purpose is to determine what the Legislature intended by the language it used. See Stearns-Hotzfield v. Farmers Ins. Exch., 360 N.W.2d 384, 389 (Minn. Ct. App. 1985). The Minnesota Legislature enacted § 541.15(b) in 1986 as part of a larger tort reform bill. See 1986 Minn. Laws, ch. 455, § 79. Extensive discussion and debate preceded the enactment of § 541.15(b). This discussion and debate gives insight into the legislative intent of § 541.15(b). Representative Kathleen Blatz, now Chief Justice-elect of the Minnesota Supreme Court, was the sponsor[6] of H.F. 1764, a predecessor to the final amendments to §

---

[6]In North Haven Board of Education v. Bell, 456 U.S. 512, 526-27 (1982), the Court observed that "remarks . . . of the sponsor of the language ultimately enacted . . . are an authoritative guide to the statute's construction." Justice Scalia echoed this statement in 1995 when he stated "what those who brought the legislation to the floor thought it meant [is] evidence as solid as any ever to be found in legislative history." Babbitt v. Sweet Home Chapter of Communities for a Great Oregon, 115 S. Ct. 2407, 2427 (1995) (Scalia, J., dissenting).

541.15, which was then referred to the House Financial Institutions and Insurance Committee.  See Appellant's App. at 20.  H.F. 1764, as originally introduced, contained a five-year disability provision.  Representative Blatz stated:

> In Section 9 we're dealing with statute of limitations.  Currently a minor can bring a lawsuit up to 19 years if it happened at birth, and what happens is you have 18 years of where you call it disability and that's because of you're of minority, and then you have an additional year.  What the bill currently does is it allows the disability to be treated like other disabilities such as mental illness, mental retardation, whatever, is covered, and that is five years of disability and then the two-year statute of limitations would run, so a minor would have seven years.[7]

------------------

[7]The next day, the Judiciary Committee continued its consideration of H.F. 1764. Representative Blatz proposed an amendment to H.F. 1764 which extended the disability period in the bill from five years to six years.  See Appellant's App. at 23.  The following dialogue took place:

> Blatz:  Mr. Chairman, . . . [t]he National Academy of Pediatricians has a model bill which would basically cover all cases and that is 6 plus 2.  Six years of disability and 2 years of bringing a lawsuit so a minor would have 8 years and that is what that amendment does.
>
> Chair:  Okay.  Can you tell me how this amendment varies from the bill as introduced again?
>
> Blatz:  Mr. Chairman, as it was introduced it was a total of 7 years.  That's one less than the model.  It just isn't worth it.  You might as well go with the model.
>
> Chair:  What does that mean to those of us who don't understand statutes of limitations?
>
> Blatz:  If you were, Mr. Chairman, if you were hurt, let's say at the age of 4 years of age.  Since you are under the age of 18, it is considered a disability in our law currently.  You're disabled, just like people who are, perhaps who are ill or incapacitated for other reasons, we give the 5 year disability and at that point, whatever statute of limitations is applicable will begin to run.  Medical malpractice is 2 years, so we'll have 5 years plus the 2 years to bring the lawsuit.
>
> Chair:  So the statute under your existing bill tolls it for five years and the statute will run two years thereafter.  And this amendment does what?
>
> Blatz:  Well, after doing some research and talking to people and finding out about the model bill, we thought there was no purpose doing it one year less than what

See id. at 22.  Approximately one week later, Senator Eric Petty introduced S.F. 1670.  See id. at 28.  S.F. 1670 was a companion bill to H.F. 1764, and it proposed a disability period of eight years.  Eventually, the House version and the Senate version were incorporated into H.F. 1950, an omnibus tort reform bill.   See Appellant's Br. at 22.

_____

they're saying so I'm just trying to get in conformity with what the model bills [sic] is.

Chair:  The model bill says toll the statute for 6 years and then--

Blatz:  Two years after that.

Chair:  Two years.  Now is that what this amendment says?

Blatz:  Yes.

See id. at 23-24.  After further discussion regarding the most practical disability period, the committee chair put the amendment to vote, stating:  "If there's no further discussion we have the Blatz amendment before us that would toll the statute for 6 years plus the 2."  See id. at 27.  The Committee adopted the amendment.  See id.

After H.F. 1950 passed the House with a six-year disability period and passed the Senate with an eight-year disability period, the House and the Senate formed a conference committee. See id. At the hearing, Representative Blatz explained the differences in the House and Senate bills:

> The difference in the two bills is the Senate provides for a[n] 8 year statute of limitations and then the 2 years running for medical malpractice on top of that. The House has 6 years plus 2. We thought we'd just split the difference to 7 plus 2. So it'd be 7 years."

See Appellant's App. at 30.

The conference committee did not report back on H.F. 1950. See Appellant's Br. at 22. The conference committee carried the bill to the House floor as H.F. 1950A amended into S.F. 2078, which contained the language of the current statute. See id. Both the House and the Senate passed S.F. 2078. See id.

We conclude from our study of the legislative history that the legislature intended § 541.15(b) to toll the two-year statute of limitations for a maximum of seven years, after which the two-year statute of limitations would commence. Thus, a plaintiff like Lelm has a maximum of nine years to file her claim after her cause of action accrues. This conclusion carries out the legislative intent of § 541.15(b).

C.  Accrual of Lelm's Cause of Action

The district court concluded the single act exception[8] applies to Lelm's claims,

---

[8]The single act exception is an exception to the general rule that a medical malpractice action accrues upon completion of treatment. See Gulley, 886 F.2d at 163. The exception applies 1) when the alleged malpractice consists of a single act which is complete at a precise time, 2) which no continued course of treatment can cure or relieve, and 3) where the plaintiff is actually aware of the facts upon which the claim is based. See id.

-12-

and Lelm's cause of action accrued on October 17, 1986.  Lelm contends the single act exception does not apply, and her claims accrued on May 10, 1991, when her treatment at Mayo ceased.  Because of our conclusion that Lelm had nine years in which to file her claims, Lelm's action filed on October 15, 1995 is timely regardless of whether her cause of action accrued on October 17, 1986 or later.  Thus, we do not reach the issue of accrual.

Judgment of dismissal is vacated and the case is remanded to the district court for further proceedings.

A true copy.

Attest:

CLERK, U. S. COURT OF APPEALS, EIGHTH CIRCUIT.