**Jeannette May BERTRAM,
et al., Appellants,**

v.

**James POOLE, et al., Respondents.**

**No. C5–99–136.**

Court of Appeals of Minnesota.

July 20, 1999.

Review Denied Sept. 28, 1999.

Ronald R. Frauenshuh, Jr., Ortonville, for appellants.

Maury Beaulier, Bloomington, for respondents.

Considered and decided by AMUNDSON, Presiding Judge, G. BARRY ANDERSON, Judge, and FOLEY,* Judge.

---

* Retired judge of the Minnesota Court of Appeals, serving by appointment pursuant to Minn. Const. art. VI, § 10.

## OPINION

AMUNDSON, Judge.

Appellants claiming repressed memory syndrome for sexual abuse perpetrated by respondent challenge the district court's granting of summary judgment based on an expired statute of limitations. We reverse and remand.

## FACTS

Jeannette and Katie Bertram are sisters who both claim they were sexually abused by their uncle, Dr. James Poole, and that Linda Poole, his wife, consented to and was aware of this abuse. Katie alleges several instances of abuse that ended when she was twelve, but Jeanette reports a much more extensive history. Jeannette frequently babysat for the Pooles. She recalls that the first incident of sexual assault by Dr. Poole occurred when she was fourteen; the abuse continued until she was seventeen. As a result, Jeannette became pregnant twice. Dr. Poole performed abortions on both occasions with the assistance of his wife. According to Jeannette, Dr. Poole also gave her birth control pills. On one occasion, when Jeannette accompanied the Pooles to Colorado for vacation, Dr. Poole sexually assaulted Jeannette on the floor of their rented apartment. Linda Poole came into the apartment, and observed them, but did not interrupt them, appearing to consent to the conduct of her husband.

During their marriage the Pooles had an "open" relationship and hosted and attended spouse-swapping parties. Linda Poole also admitted in deposition testimony that they kept pornography in the house and stated that if young girls wanted to be sexually active, she and her husband believed they should be encouraged to do so.

Both appellants now claim repressed memories of the abuse. Katie claims there are other events of sexual abuse that she has repressed, and Jeannette recalled a sexual encounter, not previously remembered, during a deposition. Both the appellants' and respondents' psychologists say that the girls consciously suppressed at least some of their memories. Both psychologists also agree the girls suffered personal injury from the abuse. But they disagree on whether the girls have repressed memory syndrome.

The district court granted respondents' motion for summary judgment, finding that there were no genuine issues of material fact regarding Katie's allegations against Linda Poole. Further, the district court determined the girls' claims were barred by the statute of limitations, which cut off the claim either when each girl became 19, or six years from the time the abuse stopped. Finally, the district court found that both Jeannette and Katie knew of the abuse, and therefore the repressed memory claim must fail, as barred by the statute of limitations.

## ISSUES

I. Did the district court err by granting respondents' summary judgment for the repressed memory claims?

II. Did the district court err by granting respondents' summary judgment on the expired statute of limitations argument?

## ANALYSIS

On an appeal from summary judgment, the reviewing court asks whether there are any genuine issues of material fact in dispute, and whether the trial court erred in its application of the law. *State by Cooper v. French*, 460 N.W.2d 2, 4 (Minn.1990). We review the district court's interpretation of the law de novo. *Sorenson v. St. Paul Ramsey Med. Ctr.*, 457 N.W.2d 188, 190 (Minn.1990). We view the evidence in the light most favorable to the party against whom summary judgment was granted and accept as true the factual testimony produced by the non-movant. *Fabio v. Bellomo*, 504 N.W.2d 758, 761 (Minn.1993).

Whether Linda Poole knew Dr. Poole was abusing Katie is a disputed fact issue. Katie recalls one night, being afraid of something, she went into the Poole's bedroom and climbed into their bed. After she fell asleep, Dr. Poole digitally assaulted her. Katie awoke during the assault, but out of fear she pretended to sleep. During this incident Katie heard Linda Poole tell her husband to be careful not to wake Katie. The district court found that this incident did not violate Minn.Stat. § 609.05 subd. 1 (1996), which states:

A person is criminally liable for a crime committed by another if the person intentionally aids, advises, hires, counsels, or conspires with or otherwise procures the other to commit the crime.

The court wrote that "to suggest [Mrs. Poole] knew what was going on is speculative at best." However, this is a factual determination and fact issues are for the jury to decide.

The trial court may not decide factual issues on a motion for summary judgment; its sole function is to determine whether fact issues exist. Facts, inferences, and conclusions that may be drawn by a jury are fact issues which may not be resolved by the trial court. All doubts and factual inferences must be resolved against the moving party.

*Hamilton v. Independent Sch. Dist. No. 114*, 355 N.W.2d 182, 184 (Minn.App.1984) (citations omitted). Whether Linda Poole knew Dr. Poole was abusing Katie is a fact issue to be decided by a jury. Viewing all the evidence in the light most favorable to the appellants, a reasonable person could find Linda Poole knew of the abuse and aided Dr. Poole in the abuse. A jury must decide this issue.

### Repressed Memory

The appellants' and respondents' psychologists both testified that Katie and Jeannette consciously suppressed at least some of their memories and both psychologists agree that the girls suffered personal injury from the abuse. Appellants' psychologist, Sandra K. Hewitt, states:

Research has long considered the effects of repressed memory and there is data on Holocaust survivors and WWII veterans that documents memory for previously forgotten events that is recovered. * * * The memory presentation that [Jeannette] exhibits is like the most common memory of abuse seen in a well documented population of abuse survivors where memories and knowledge of abuse are described as having been largely or completely disowned and "put out of mind" outside of daily awareness. However the person reports having always essentially known of the abuse. In this context in adult life combinations of the following experiences occur: delayed realization of the impact of the abuse; retrospective interpretation of the events as abuse; and vivid intensive emotional re-experiencing of the events.

(Citations omitted.) The respondents' psychologist, Paul M. Reitman, states:

In summary, I believe that Jeannette Bertra[m] is a reliable historian with regards to her being sexually abused by Dr. James Po[o]le. I do not believe she had repressed memory syndrome. I have treated, in the course of my 17 years as a licensed psychologist, many children, adolescents, and women who were sexually abused by relatives. I have not encountered one case where there was an actual repressed memory syndrome whereby the individual had no recollection of the events.

Whether the girls had repressed memories is a fact issue. The two psychologists disagree whether the girls suffered from repressed memory syndrome. Respondents' psychologist does not believe there is any scientific basis for repressed memory.[1] Yet, "[w]here expert witnesses offer

---

**1.** It is problematic that the supreme court in *W.J.L.* stated that once a victim is abused the statue of limitations begins to run because of the causal connection between the abuse and

conflicting opinions, it is for the jury, as the ultimate trier of fact, to consider their qualifications and determine the weight to be given their opinions." *McKay's Family Dodge v. Hardrives, Inc.*, 480 N.W.2d 141, 146 (Minn.App.1992) (citations omitted).

Even if the claims are barred by the statute of limitations, Katie and Jeannette may still obtain a disability extension for their repressed memory claims. A determination that the girls suffered from repressed memory syndrome may extend the statute of limitations. *See W.J.L. v. Bugge*, 573 N.W.2d 677, 681–82 (Minn. 1998) (discussing that W.J.L. did not claim any repressed memories, did not claim any disability which served to delay the running of the statute of limitations, and also did not claim that she was so traumatized that she was incapable of filing suit in a timely manner). An additional argument can be made that because of the trauma and confusion that what their uncle did to them was wrong, Katie and Jeannette may have been incapable of filing a lawsuit. *Id.* While the dissent by Justice Gardebring in *Blackowiak v. Kemp*, 546 N.W.2d 1 (Minn. 1996) is instructive, the supreme court rejected that reasoning again in *W.J.L.*.

### Statute Of Limitations

■ The main issue in this case is the statute of limitations argument. In *Blackowiak* the Minnesota Supreme Court construed the delayed discovery statute. There the claimant alleged that in 1970 or 1971, when he was 11 years old, his school counselor sexually abused him. *Id.* at 2. Blackowiak knew at the time of the alleged abuse that the counselor's actions were wrong, but was unable to discuss them because he felt guilt and shame. *Id.* The

court stated that "as a matter of law one is 'injured' if one is sexually abused." *Id.* at 3. The court further determined "that personal injury caused by sexual abuse, as opposed to personal injury caused by any other activity, is subject to a different limitation period because of its uniqueness." *Id.*; *see* Minn.Stat. § 541.07(1) (1996) (imposing a two-year limitation for torts resulting in personal injury). Whether a plaintiff had reason to know of the abuse is generally a question of fact for a jury. *Blackowiak*, 546 N.W.2d at 3 (citing *Wittmer v. Ruegemer*, 419 N.W.2d 493, 498 (Minn.1988)).

■ Claims of sexual abuse are subject to delayed discovery. The statue provides:

**Limitations period.** (a) An action for damages based on personal injury caused by sexual abuse must be commenced within six years of the time the plaintiff knew or had reason to know that the injury was caused by the sexual abuse.

\* \* \* \*

(d) This section does not affect the suspension of the statute of limitations during a period of disability under section 541.15.

Minn.Stat. § 541.073, subd. 2 (1996).

In *W.J.L.*, the supreme court interpreted this delayed discovery statute. Resembling this case, *W.J.L.* involved the victim's infancy status as a disability. The supreme court held that a disability prevents the strict running of the statute. Absent any other disability, the statute of limitations for sexual abuse in an infancy situa-

---

the injury, unless there is a legal repressed memory disability. Yet, Dr. Hewitt states here that repressed memory syndrome may include essential knowledge of the events that took place. This raises the question of whether the victim may suffer from repressed memory syndrome under a legal definition. Respondents' expert maintains that repressed memory syndrome does not exist. Hence, the issue appears unsettled under *W.J.L.* A question of whether Katie and Jeannette suffered

from repressed memory syndrome is a fact issue for the jury, but because the Minnesota Supreme Court hasn't decided a repressed memory case, what legally constitutes repressed memory syndrome remains unclear. For example, is repressed memory syndrome a clinical diagnosis that must be identified by an expert or is there some limiting legal requirement, and how would that affect the "know or should have known" standard?

tion absolutely tolls when the victim reaches the age of 25.

Here, absent a disability which serves to delay the running of the statute of limitations, the limitations period under the delayed discovery statute would have begun to run one year after W.J.L. reached the age of majority and expired when she turned 25. Minn.Stat. § 541.15(a)(1). W.J.L. does not allege any disability which would have prevented her from pursuing her sexual abuse claims against Bugge within six years of the time she turned 19 years of age. *W.J.L.*, 573 N.W.2d at 682.

■ The district court mistakenly interpreted the supreme court's decision in *W.J.L.*, to end the statute of limitations period for victims of sexual abuse either at the age of 19, when the infancy disability ended, or six years after the actual abuse ended. Under *W.J.L.*, neither is appropriate. The supreme court determined that the statutes were meant to be read together, allowing a seven-year period before the statute of limitations bars an action for an infancy disability.

The dissent's interpretation of the statutes neither agrees with the district court nor the supreme court. Rather, the dissent's reading would require any sexual abuse claim effected by infancy, under Minn.Stat. § 541.15, subd. (a)(1), to be brought before the victim's nineteenth birthday or it would be barred by the statute of limitations. Thus the dissent's statutory interpretation would bar a person who suffered sexual abuse at age sixteen or seventeen from bringing a claim after turning nineteen even though the six-year statute under Minn.Stat. § 541.073 had not tolled.

■ Nevertheless, the difficulty with sexual abuse cases is the determination that implicit in the act of sexual abuse is personal injury. Because the Minnesota Supreme Court has intertwined the two, the victim is immediately put on notice of the causal connection between the abuse and the injury. *W.J.L.*, 573 N.W.2d at 681. Under this reasoning, the statute of limitations begins to run once a victim is abused unless there is some legal disability, such as age, mental disability, or repressed memory—something that disables the reasonable person from recognizing or understanding that he or she was abused. *Id.* The Minnesota Supreme Court determined that a victim has until age 25 to bring suit under the *W.J.L.* interpretation of the statutes.

Jeanette's case is still barred, because she was already 25 when this case was filed on April 10, 1997. The delayed discovery statute would have begun to run one year after she reached the age of majority and expired when she turned 25. Therefore, Jeanette's only remedy is a determination that she suffered a repressed memory disability, which delays the statute of limitations.

### DECISION

We remand for a jury determination of whether the Katie and Jeannette suffered from repressed memory syndrome.

**Reversed and remanded.**

DANIEL F. FOLEY, Judge (dissenting)

I respectfully dissent. I do not concur with the majority's conclusion that the statute of limitations for sexual abuse suits expires when the alleged victim reaches the age of 25. The law in the area of deferred memory sexual abuse in Minnesota is unsettled. Two statutes, Minn.Stat. §§ 541.073 and 541.15 (1996), and three cases, *W.J.L. v. Bugge*, 573 N.W.2d 677 (Minn.1998), *Blackowiak v. Kemp*, 546 N.W.2d 1 (Minn.1996), and *J.J. v. Luckow*, 578 N.W.2d 17 (Minn.App.1998), *review denied* (Minn. July 16, 1998), directly bear on the issue of infancy disability and statute of limitations for personal injury suits based on sexual abuse. In my considered judgment, the statutes at issue are clear and unambiguous. They do not provide

for extension of the statute of limitations such that a complainant has six years after reaching the age of 19 (one year after the disability of infancy has expired) to file a cause of action that arose during the period of infancy. It is important for the supreme court to revisit the relevant statutes and cases and set out in unmistakable language the effect of the infancy disability on the limitations period in deferred memory sexual abuses cases.

Minn.Stat. § 541.073, subd. 2(a), sets out the limitations period for sexual abuse suits:

> An action for damages based on personal injury caused by sexual abuse must be commenced within six years of the time the plaintiff knew or had reason to know that the injury was caused by the sexual abuse.

Under this "delayed discovery" rule, the six-year statute of limitations period begins to run when the complainant knew or should have known that he/she was sexually abused, as opposed to when he/she was aware or should have been aware that the sexual abuse caused injury. *Blackowiak*, 546 N.W.2d at 3 (citing with approval the objective, reasonable person standard set out in *ABC v. Archdiocese of St. Paul*, 513 N.W.2d 482 (Minn.App.1994)). If the statute of limitations period commences during a period of disability such as infancy, however, it falls within the dictates of Minn. Stat. § 541.15. *See* Minn.Stat. § 541.073, subd. 2(d) ("This section [541.073] does not affect the suspension of the statute of limitations during a period of disability under section 541.15.")

Minn.Stat. § 541.15(a) provides that infancy, one of four grounds of disability,[2] "shall suspend the running of the period of limitation until the same is removed." The only proviso to this rule is that *"such period* [of limitation], except in the case of infancy, shall not be extended for more than five years, nor in any case for more than one year after the disability ceases." *Id.* (emphasis added). This language differs from paragraph (b) of Minn.Stat. § 541.15, which applies to actions against a health care provider and states that the infancy disability "suspends the period of limitation until the *disability is removed*," but "[t]he *suspension* may not be extended for more than seven years, or for more than one year after the disability ceases." Minn.Stat. § 541.15(b) (emphasis added). Paragraph (a), unlike paragraph (b), contains words of repose, which specify a presumptive number of years after which an action cannot be brought (i.e. one year after the disability of infancy ceases). *Lelm by Lelm v. Mayo Found.*, 135 F.3d 584, 587–88 (8th Cir.1998) (interpreting Minn.Stat. § 541.15(b)). Moreover, the difference in phraseology demonstrates that had the legislature intended to suspend the limitations period in paragraph (a) until the victim reaches the age of 19, after which the six-year statute of limitations would commence, it would have drafted language similar to paragraph (b) evidencing such intent.

Nevertheless, the supreme court most recently observed that the limitations period under the delayed discovery statute would begin to run one year after a complainant reaches the age of majority and expire when the complainant turns 25. *Bugge*, 573 N.W.2d at 682 (citing Minn. Stat. § 541.15(a)(1)). The issue in *Bugge* was when an alleged victim of sexual abuse knew or had reason to know of the sexual abuse for purposes of determining when the statute of limitations begins to run. *Id.* at 679. The court held:

> [T]he statute of limitations begins to run once a victim is abused unless there is some legal disability, such as the victim's age, or mental disability, such as repressed memory of the abuse, which

2. The four grounds of disability are: (1) the plaintiff is within the age of 18 years; (2) the plaintiff's insanity; (3) the plaintiff is an alien and the subject or citizen of a country at war with the United States; and (4) when the beginning of the action is stayed by injunction or by statutory prohibition. Minn.Stat. § 541.15(a).

would make a reasonable person incapable of recognizing or understanding that he or she had been sexually abused. *Id.* at 681.

After *Bugge*, this court interpreted Minn.Stat. § 541.15(a) in *Luckow*, 578 N.W.2d at 20–21. This court concluded that under the plain language of the statute and past caselaw applying the one-year rule for disabilities, a cause of action is barred if commenced after the alleged sexual abuse victim's 19th birthday, one year after infancy ends. *Id.* at 20. In addition, an infancy disability provides an alleged victim of sexual abuse no advantage for an action commenced after the victim's 19th birthday, even if the six-year statute of limitations period has not yet expired. *Id.* (noting that the limitation period is shorter under the one-year infancy rule than under the six-year statute of limitations). The court stated that it "was unpersuaded that [the supreme court's contrary observation in *Bugge* ] represents a reinterpretation of section 541.15(a)(1) and an overturning of over 90 years of decisions on the impact of the one-year extension in the event of infancy." *Id.* at 21.

In the present case, the alleged sexual abuse of both appellants occurred during their infancy. One recalls several incidents of sexual abuse beginning at the age of 9; the last incident she recalls occurred when she was 12. The other recalls that her abuse began when she was 14 and continued until she was 17. The record indicates that they knew or should have known of the abuse before they reached the age of 19. Both appellants have passed their 19th birthdays. Accordingly, under Minn.Stat. § 541.15(a)(1), the time for filing suit has already expired. Because their claims are barred by the expiration of the one-year infancy limitations rule, I would affirm the district court.

Relying on *Bugge*, the majority also bases its decision on a disability extension of the six-year statute of limitations for repressed memory syndrome. The majority misreads *Bugge* to stand for the proposition that repressed memory syndrome is a disability that automatically suspends the running of the statute of limitations. Repressed memory syndrome does not toll the limitations period. *Roe v. Archdiocese of St. Paul & Minneapolis*, 518 N.W.2d 629, 632 (Minn.App.1994) (applying the objective, reasonable person standard later adopted in *Blackowiak* ), *review denied* (Minn. Aug. 24, 1994). As this court pointed out in *Roe*, if the legislature intended to include repressed memory in Minn.Stat. § 541.15, it could have done so. *Id. Bugge*, 573 N.W.2d at 681, merely reiterates *Blackowiak*, stating that the statute of limitations commences when the victim knew or should have known that abuse occurred. The facts of this case indicate that, regardless of their claims of repressed memory syndrome, both appellants knew or should have known the abuse occurred before expiration of the infancy limitations period. Hence, under *Blackowiak*, the district court properly determined that the repressed memory argument does not direct a different result.