D.M.S., Petitioner, Appellant,

v.

Kennedy BARBER, Defendant,

The Professional Association of Treatment Homes (PATH), a non-profit Minnesota Corporation, Respondent.

No. C8–00–2227.

Supreme Court of Minnesota.

June 13, 2002.

---

Patrick T. Tierney, Thomas E. McEllistrem, Collins, Buckley, Sauntry & Haugh, P.L.L.P., Saint Paul, MN, for Appellant.

Jeanette M. Bazis, Greene Espel, P.L.L.P., Minneapolis, MN, for Respondent.

Barbara J. Felt, Reinhardt & Anderson, Saint Paul, MN, for Amicus Curiae.

## OPINION

PAGE, Justice.

In August or September 1992, 13–year–old D.M.S. was placed in the home of Kennedy Barber, a foster parent supervised by the Professional Association of Treatment Homes (PATH). Approximately five months later, on February 22, 1993, D.M.S. was removed from the Barber home after D.M.S. informed a Hennepin County social worker that he felt uncomfortable in the Barber home, that Barber was sleeping with boys in his bedroom, and that Barber had asked D.M.S. if he would sleep with Barber. D.M.S. commenced an action against PATH on June 8, 1999, approximately nine months after his 19th birthday and more than six years after February 22, 1993. D.M.S. alleged that PATH negligently hired, supervised, and retained Barber as a foster parent, and also claimed that PATH was liable for Barber's abuse under the doctrine of respondeat superior. The district court granted PATH's motion for summary judgment on the grounds that the statute of limitations had run on both claims. D.M.S. appealed and the court of appeals affirmed. We granted D.M.S.'s petition for review to decide whether his claims are barred by the statute of limitations, and we now reverse and remand.

D.M.S. was born on September 10, 1979. Hennepin County placed D.M.S. in Kennedy Barber's foster home under the supervision of PATH sometime in August or September 1992. Barber was licensed as a foster-care provider in October 1990 at the recommendation of PATH, a non-profit private agency licensed by the Minnesota Department of Human Services (DHS) to provide foster home placement for children unable to remain in their current living situation. In addition to placing children, PATH is responsible for supervising and evaluating foster-care homes and making recommendations to DHS regarding whether to grant or revoke foster-home licenses.

D.M.S. claims that, shortly after his placement in the Barber home, Barber began to touch him in an inappropriate manner. The touching began with uncomfortably long hugs and then moved on to kissing, fondling, and, eventually, oral sex. In a deposition, D.M.S. reported that he initially felt as though he was in a "daze" and "didn't understand it." Over time, D.M.S. felt "used," "like a piece of meat or something." He further stated that he often had a sick feeling in his stomach and "just felt bad." At some point, D.M.S. told his mother about Barber's conduct. On February 22, 1993, D.M.S. reported Barber's conduct to a Hennepin County social worker and he was removed from the Barber home that day.[1]

On June 8, 1999, D.M.S. served PATH with a summons and complaint alleging that PATH was liable for the injuries caused by the acts of sexual abuse committed by Barber.[2] The complaint alleged that PATH was negligent in its hiring, retention, and supervision of Barber, its failure to investigate and act upon prior allegations of sexual misconduct against Barber, and its placement of D.M.S. in Barber's care. In addition, the complaint alleged that PATH was responsible for Barber's wrongful conduct under the doctrine of respondeat superior.

The district court granted PATH's motion for summary judgment on the grounds that D.M.S.'s negligence-based claims were barred by the six-year statute of limitations set forth in Minn.Stat. § 541.073, subd. 2(a) (2000), and that his respondeat superior claim was barred by the two-year statute of limitations set forth

in Minn.Stat. § 541.07(1) (2000). D.M.S. appealed and the court of appeals affirmed.

## I.

■ On review of a summary judgment, we determine whether there are any genuine issues of material fact and whether the district court correctly applied the law. *Jefferson v. Comm'r of Revenue,* 631 N.W.2d 391, 394–95 (Minn.2001), *cert. denied,* —— U.S. ——, 122 S.Ct. 1304, 152 L.Ed.2d 215 (2002); *State ex rel. Cooper v. French,* 460 N.W.2d 2, 4 (Minn.1990). Determination of whether summary judgment was properly granted on statute of limitations grounds depends in part on construction of the implicated statutes. *Ryan v. ITT Life Ins. Corp.,* 450 N.W.2d 126, 128 (Minn.1990). Statutory construction is a question of law subject to de novo review. *Burkstrand v. Burkstrand,* 632 N.W.2d 206, 209 (Minn.2001); *Ryan,* 450 N.W.2d at 128.

## II.

■ We first consider whether D.M.S.'s negligence claims are barred by the statute of limitations. Generally, personal injury actions grounded on negligence must be commenced within the six-year period of limitation provided in Minn. Stat. § 541.05(5) (2000). *Am. Mut. Liab. Ins. Co. v. Reed Cleaners,* 265 Minn. 503, 506 n. 1, 122 N.W.2d 178, 180 n. 1 (1963); *see Villaume v. Wilkinson,* 209 Minn. 330, 332, 296 N.W. 176, 177 (1941). Under the minority tolling statute, Minn.Stat. § 541.15(a)(1) (2000), when a negligence

---

**1.** D.M.S. alleges that he had two additional sexual encounters with Barber after he was removed from the Barber home. The district court and the court of appeals held that PATH had no duty to protect D.M.S. after he left PATH's care on February 22, 1993. This issue is not before us.

**2.** D.M.S.'s complaint also named Barber as a defendant. The claims against Barber are not before us on this appeal.

action accrues during a plaintiff's infancy, the plaintiff must commence the action either within one year of reaching the age of majority or within the six-year period of limitation, whichever is later. *See Anderson v. Lutheran Deaconess Hosp.*, 257 N.W.2d 561, 562 (Minn.1977); *Langer v. Newmann*, 100 Minn. 27, 29, 110 N.W. 68, 68–69 (1907).

■ In 1989, the legislature, recognizing the unique nature of personal injuries caused by sexual abuse, enacted what is now commonly referred to as the delayed discovery statute. Act of May 19, 1989, ch. 190, § 2, 1989 Minn. Laws 485, 486–87 (codified as amended at Minn.Stat. § 541.073 (2000)). Under the delayed discovery statute, the period of limitation for an action against a person who negligently permits sexual abuse to occur, like the period of limitation for negligence actions in general, is six years. Minn.Stat. § 541.073, subds. 2(a), 3(2) (2000). Significantly, the delayed discovery statute also provides that the six-year period of limitation does not begin to run until the plaintiff knows or has reason to know that his or her personal injury was caused by sexual abuse. *Id.* Interpreting this statutory language in *Blackowiak v. Kemp*, 546 N.W.2d 1 (Minn.1996), we observed that "as a matter of law one is 'injured' if one is sexually abused," and stated that the "ultimate question" posed by the delayed discovery statute is "the time at which the complainant knew or should have known that he/she was sexually abused." *Id.* at 3. This question is answered through the application of the objective, reasonable person standard. *W.J.L. v. Bugge*, 573 N.W.2d 677, 681 (Minn.1998); *Blackowiak*, 546 N.W.2d at 3. Thus, to decide whether the six-year period of limitation expired before D.M.S. commenced his action against PATH on June 8, 1999, we must determine the time at which a reasonable person standing in D.M.S.'s shoes would have known he was sexually abused.

PATH argues that D.M.S. knew that he had been sexually abused no later than February 22, 1993, the date on which D.M.S. reported Barber's misconduct to a social worker, and that D.M.S. had six years from that date to commence his action. The soundness of PATH's argument depends on the accuracy of its assumption that it is reasonable to expect a child to understand that he or she has been the victim of sexual abuse. The legislative history and purpose of the delayed discovery statute and our prior cases interpreting the statute cast doubt on the validity of this assumption.

The legislature drafted the delayed discovery statute in response to concerns that victims of sexual abuse, particularly those victimized by someone in a position of authority and those victimized during childhood, often react to the abuse by developing psychological coping mechanisms that prevent them from commencing a legal action within the normal period of limitation for negligence or battery actions. *Bugge*, 573 N.W.2d at 680 n. 5; *see also* Hearing on H.F. 461, H. Comm. Judiciary, Criminal Justice Div., 76th Minn. Leg., Feb. 28, 1989 (audio tape); Hearing on S.F. 315, S. Comm. Judiciary, Criminal Law Div., 76th Minn. Leg., Feb. 17, 1989 (audio tape). These coping mechanisms can take any number of forms, including feelings of denial, shame, and guilt, and repression of memories of the abuse. *See Bugge*, 573 N.W.2d at 680 n. 5 (discussing the psychological effects of childhood sexual abuse); Hearing on S.F. 315. By enacting the delayed discovery statute, the legislature sought to address this phenomenon by giving sexual abuse victims more time to recognize the abuse they suffered. *Bugge*, 573 N.W.2d at 680; Hearing on H.F. 461; Hearing on S.F. 315.

We first had occasion to interpret and apply the delayed discovery statute in *Blackowiak*. In that case, Blackowiak alleged that he had been sexually abused by Kemp in 1970 or 1971, when Blackowiak was 11 years old. 546 N.W.2d at 2. Blackowiak commenced his action against Kemp approximately 21 years later, in 1992. *Id.* The sole issue on appeal was whether Blackowiak's claim was timely under the delayed discovery statute. *Id.* We held that Blackowiak's claim was barred on the ground that the evidence overwhelmingly demonstrated that Blackowiak knew of the sexual abuse more than six years before he brought suit. *Id.* at 3.

The court's analysis of the facts in *Blackowiak* is instructive on the question of whether a victim of childhood sexual abuse can be reasonably expected to know of the abuse for purposes of the delayed discovery statute. Soon after 11-year old Blackowiak was sexually abused, he told a friend to "watch out for" Kemp because Blackowiak did not want the friend to be abused. *Id.* at 2. At approximately the same time, Blackowiak's mother asked him if Kemp was doing anything "wrong" to him and Blackowiak responded in the affirmative. *Id.* Thus, Blackowiak, like D.M.S., appeared to acknowledge the fact that he had been sexually abused either when the abuse occurred or shortly thereafter. Yet our conclusion that a reasonable person would have known of the abuse more than six years before Blackowiak commenced his action was not a result of the statements made by Blackowiak during his infancy. Rather, we based our decision on the fact that Blackowiak demonstrated knowledge of the abuse after he reached the age of majority. Specifically, we noted that Blackowiak felt too ashamed to discuss the abuse during his adult chemical dependency treatment and psychology sessions and that Blackowiak had an angry reaction to a 1981 encounter with Kemp when Blackowiak was approximately 22 years old. *Id.* at 3.

We next had the opportunity to interpret the delayed discovery statute in 1998 in *Bugge*. In that case, W.J.L. alleged that she had been sexually abused by Bugge during a period of time beginning in March 1978, when W.J.L. was 16 years old, and ending in August 1980, when she was 19 years old. 573 N.W.2d at 679. W.J.L. did not commence her action until 1995, when she was 33 years old. As in *Blackowiak,* the issue before the court in *Bugge* was whether the claim was barred under the delayed discovery statute. *Bugge,* 573 N.W.2d at 679. We reinstated summary judgment in favor of Bugge, concluding that "a reasonable person standing in W.J.L.'s shoes would either know or have reason to know more than six years before [W.J.L.'s] lawsuit was commenced that Bugge's alleged conduct constituted sexual abuse." *Id.*

For purposes of the present case, the most significant feature of our decision in *Bugge* is its explicit statement of the tacit idea in *Blackowiak:* children are incapable of understanding that they have been sexually abused. Discussing the legislature's purpose in enacting section 541.073, we stated that the "underlying rationale for the limitations period contained in [the delayed discovery statute] is that *many sexual abuse victims, especially young children, are psychologically and emotionally unable to recognize that they have been abused."* *Bugge,* 573 N.W.2d at 680 (emphasis added).[3] We stated:

**3.** Similarly, Justice Gardebring stated in her dissent in *Blackowiak* that the legislature enacted the delayed discovery statute "in recognition of the fact that injuries from sexual abuse are often psychological in nature, that they may be essentially latent for many years

[I]n *Blackowiak,* we said nothing more than that implicit in the act of sexual abuse is personal injury, and, because the two are intertwined, the victim is immediately put on notice of the causal connection between the abuse and injury. Accordingly, the statute of limitations begins to run once a victim is abused *unless there is some legal disability, such as the victim's age,* or mental disability, such as repressed memory of the abuse, *which would make a reasonable person incapable of recognizing or understanding that he or she had been sexually abused.*

*Id.* at 681 (emphasis added).[4] Put differently, a reasonable person under the legal disability of infancy is incapable of recognizing or understanding that he or she has been sexually abused. The delayed discovery statute provides that the six-year period of limitation does not begin to run until a reasonable person would know of the sexual abuse. Minn.Stat. § 541.073, subd. 2(a); *Blackowiak,* 546 N.W.2d at 3. Thus, it follows that the six-year period of limitation does not begin to run on a cause of action arising from childhood sexual abuse until the victim reaches the age of majority.[5]

■ PATH's argument that D.M.S. knew that he was sexually abused when he was 13 years old is inapposite given our analysis of the facts in *Blackowiak* and our statement in *Bugge* that a reasonable person under the legal disability of infancy is incapable of recognizing or understanding that he or she has been sexually abused. More fundamentally, PATH's argument ignores the fact that children, unlike adults, lack the psychological, emotional, and sexual maturity necessary to fully appreciate the fact that they have been sexually

---

(at least until adolescence in most cases) and that shame and denial often accompany the events." 546 N.W.2d at 4; *see also* Hearing on H.F. 461 ("[V]ictims * * * of sexual abuse often do not recognize that the abuse has occurred or discover their psychological injuries until many years after that abuse.") (comments of Rep. Kelly, House sponsor of the bill).

4. The dissent quotes portions of this passage from *Bugge,* but omits the language identifying the victim's age as one of the legal disabilities that would make a reasonable person incapable of recognizing or understanding that he or she had been sexually abused. The dissent also asserts that our statement in *Bugge* is not controlling here because "the joint application of the [delayed discovery statute and the minority tolling statute] was not before the court [in *Bugge* ]." Yet in *Bugge,* as in this case, we considered whether a claim brought by a victim of childhood sexual abuse was barred by the delayed discovery statute. Deciding such an issue necessarily involves an examination of the time at which the period of limitation begins to run and the time at which the period of limitation expires. The fact that our statement that "the statute of limitations begins to run once a victim is abused unless there is some legal

disability, such as the victim's age * * * which would make a reasonable person incapable of recognizing or understanding that he or she had been sexually abused" was made in the context of an interpretation of the delayed discovery statute, rather than the minority tolling statute or some combination of the two statutes, does not diminish its applicability here.

5. However, we also stated in *Bugge* that the plaintiff did not allege a disability that would have prevented her from bringing an action within six years of reaching the age of *19,* not 18. 573 N.W.2d at 682. Understandably, our conflicting statements in *Bugge* have generated confusion as to the proper rule to apply to causes of action arising from childhood sexual abuse. *Compare Bertram v. Poole,* 597 N.W.2d 309, 314 (Minn.App.), *rev. denied* (Minn. Sept. 28, 1999), *with J.J. v. Luckow,* 578 N.W.2d 17, 21 (Minn.App.), *rev. denied* (Minn. July 16, 1998). We now recognize that our statement in *Bugge* allowing W.J.L. six years from the date of her 19th birthday to commence her action was based on an improper application of the minority tolling statute and was, therefore, in error.

abused. *See Bugge*, 573 N.W.2d at 680. Finally, a holding in favor of PATH would essentially erase the difference between the delayed discovery statute as it applies to negligence actions and section 541.05(5), which contains the six-year period of limitation applicable to most negligence actions. Given our holding in *Blackowiak* that "as a matter of law one is 'injured' if one is sexually abused," 546 N.W.2d at 3, the delayed discovery statute's six-year period of limitation for a cause of action based on childhood sexual abuse would expire when the plaintiff reached the age of 19 or six years from the date of the abuse, whichever is later. This is precisely the same result that would be reached through the application of section 541.05(5) and section 541.15(a)(1). In most cases, then, the delayed discovery statute would not provide victims of childhood sexual abuse with any additional time to commence a negligence action. Reading the delayed discovery statute in this way would defeat its purpose and render the statute meaningless for children. These considerations lead us to conclude that, as a matter of law, a reasonable child is incapable of knowing that he or she has been sexually abused and, absent some other disability that serves to delay the running of the statute of limitations, the six-year period of limitation under the delayed discovery statute begins to run when the victim reaches the age of majority.

Applying our holding to the facts of this case, we conclude that D.M.S.'s negligence claims against PATH are not barred. D.M.S. was allegedly sexually abused by Barber when he was 13 years old. With the exception of infancy, D.M.S. does not allege any disability that would prevent him from knowing of the sexual abuse. Thus, the limitations period began to run on his negligence claims on September 10, 1997, his 18th birthday. D.M.S. commenced his action on June 8, 1999, well within the delayed discovery statute's six-year period of limitation.

### III.

■■■ We next address whether D.M.S.'s respondeat superior claim is barred by the statute of limitations. Under the well-established principle of respondeat superior, an employer is vicariously liable for the torts of an employee committed within the course and scope of employment. *Fahrendorff ex rel. Fahrendorff v. N. Homes, Inc.*, 597 N.W.2d 905, 910 (Minn.1999); *Schneider v. Buckman*, 433 N.W.2d 98, 101 (Minn.1988). Such liability stems not from any fault of the employer, but from a public policy determination that liability for acts committed within the scope of employment should be allocated to the employer as a cost of doing business. *Hagen v. Burmeister & Assocs., Inc.*, 633 N.W.2d 497, 504 (Minn.2001); *Fahrendorff*, 597 N.W.2d at 910. For purposes of the statute of limitations, a respondeat superior claim is the same as a cause of action against the employee who committed the tort. *See Kaiser v. Mem'l Blood Ctr. of Minneapolis, Inc.*, 486 N.W.2d 762, 767 (Minn.1992); *Grondahl v. Bulluck*, 318 N.W.2d 240, 244 (Minn.1982). Citing this common law rule, D.M.S. asserts that his respondeat superior claim, based on acts of sexual abuse committed by Barber, is governed by the delayed discovery statute.

While PATH acknowledges that the statute of limitations for respondeat superior claims is generally the same as that for the underlying tort action, it argues that Minn.Stat. § 541.073, subd. 3 (2000), creates an exception to this rule by limiting the applicability of the delayed discovery statute to two kinds of actions. Subdivision 3 provides that the delayed discovery statute "applies to an action for damages commenced against a person

who caused the plaintiff's personal injury either by (1) committing sexual abuse against the plaintiff, or (2) negligently permitting sexual abuse against the plaintiff to occur." Had the legislature intended that the delayed discovery statute apply to respondeat superior claims against the abuser's employer, PATH argues, it would have included such claims in the list of actions enumerated in subdivision 3. Because the legislature did not do so, PATH contends that D.M.S.'s claim is governed by Minn.Stat. § 541.07(1), which provides a two-year period of limitation for battery actions.[6]

Section 541.07(1), like section 541.073, subdivision 3, does not explicitly refer to respondeat superior claims. Indeed, none of the statutes of limitations contain an explicit reference to causes of action based on the principle of respondeat superior. *See* Minn.Stat. §§ 541.01–.22 (2000). Thus, were we to accept PATH's argument and follow it to its logical conclusion, we would be forced to hold that there is no statutory period of limitation for respondeat superior claims. We cannot conclude that the legislature intended such an absurd result. *See State v. Murphy*, 545 N.W.2d 909, 916 (Minn.1996); Minn.Stat. § 645.17(1) (2000).

■ We find it more reasonable to conclude that the legislature, cognizant of the common law rule that, for purposes of the statute of limitations, respondeat superior claims are treated the same as causes of action against the employee who committed the tort, felt it unnecessary to include respondeat superior claims in section 541.073, subdivision 3. We therefore hold that respondeat superior claims arising from sexual abuse, like other respondeat superior claims, are governed by the stat-

ute of limitations that applies to the underlying tort action.

D.M.S.'s respondeat superior claim against PATH arose from acts of sexual abuse committed by Barber and is therefore governed by the delayed discovery statute. *See id.*, subd. 3(1). Thus, D.M.S.'s respondeat superior claim, like his negligence claims, is timely and the district court improperly granted summary judgment in favor of PATH.

Reversed and remanded.

STRINGER, Justice (dissenting).

While the ruling of the majority may make sense from a policy standpoint—that a child is conclusively presumed to be incapable of knowing that he or she has been sexually abused, and therefore has an additional six years after becoming an adult to bring a cause of action—that clearly is not the policy of the legislature as reflected in Minn.Stat. § 541.073 (2000). As the responsibility of the judicial branch is to apply the laws adopted by the legislature, and not selectively, I respectfully dissent. A strict statutory analysis, as outlined below, leads to the conclusion that the district court properly granted summary judgment in favor of PATH. Therefore I would affirm.

The limitations period for negligence actions is typically governed by Minn.Stat. § 541.05(5) (2000), but the delayed discovery statute provides a special limitations period for actions involving sexual abuse, as appellant alleges here. The delayed discovery statute provides, in relevant part:

(a) An action for damages based on personal injury caused by sexual abuse must be commenced within six years

---

**6.** Section 541.07(1) states, in relevant part, that the two-year limitations period applies to actions "for libel, slander, assault, battery, false imprisonment, or other tort, resulting in personal injury."

of the time the plaintiff knew or had reason to know that the injury was caused by the sexual abuse.

\* \* \* \*

(d) This section does not affect the suspension of the statute of limitations during a period of disability under section 541.15.

Minn.Stat. § 541.073, subd. 2 (2000).

The error of the majority is that it basically ignores subpart (d), the legislative declaration that Minn.Stat. § 541.15 (2000), the minority tolling statute, is *unaffected* by the delayed discovery statute. Section 541.15 provides:

[A]ny of the following grounds of disability, existing at the time when a cause of action accrued or arising anytime during the period of limitation, shall suspend the running of the *period of limitation* until the same is removed; provided that *such period,* except in the case of infancy, *shall not be extended* for more than five years, nor *in any case for more than one year after the disability ceases:*

(1) that the plaintiff is within the age of 18 years; \* \* \*.

Minn.Stat. § 541.15(a) (2000) (emphasis added). For purposes here, the critical terms are "the period of limitation \* \* \* shall not be extended \* \* \* in any case for more than one year after the disability ceases."[1] For nearly a century, the minority tolling statute has been so interpreted—a minor has until age 18, plus one year, to commence suit for a cause of action that arose during his or her infancy. *See, e.g., Anderson v. Lutheran Deaconess Hosp.,* 257 N.W.2d 561, 562 (Minn.1977); *Voegele v. Mahoney,* 237 Minn. 43, 49, 54 N.W.2d 15, 19 (1952); *Langer v. Newmann,* 100 Minn. 27, 29, 110 N.W. 68, 69 (1907); *see also J.J. v. Luckow,* 578 N.W.2d 17, 20–21 (Minn.App.), *rev. denied* (Minn. July 16, 1998).[2]

Although the majority correctly states that "[u]nder the minority tolling statute, \* \* \* when a negligence action accrues during a plaintiff's infancy, the plaintiff must commence the action either within one year of reaching the age of majority or within the six-year period of limitation, whichever is later," it ignores this rule in the context of the delayed discovery statute—despite the explicit direction in section 541.073 that it is to be applied in deference to section 541.15.[3] Instead, the majority asserts that a minor is incapable of knowing that he or she was abused at the time the abuse occurs and that the six-

**1.** Compare the language of Minn.Stat. § 541.15(b) (2000), which provides:

In actions alleging malpractice, \* \* \* the ground of disability specified in paragraph (a), clause (1), suspends the period of limitation until the disability is removed. The *suspension* may not be extended for more than seven years, or for more than one year after the disability ceases.

(Emphasis added.) As noted in the dissent from the court of appeals' decision in *Bertram v. Poole,* 597 N.W.2d 309, 315 (Minn.App.) (Foley, J., dissenting), *rev. denied* (Minn. Sept. 28, 1999), this difference demonstrates that if the intent of the legislature was "to suspend the limitations period in paragraph (a) until the victim reaches the age of 19, after which the six-year statute of limitations would com-

mence, it would have drafted language similar to paragraph (b) evidencing such intent."

**2.** As the majority points out, our statement in *W.J.L. v. Bugge,* 573 N.W.2d 677 (Minn.1998), that the limitations period under the delayed discovery statute would begin to run one year after a complainant reaches the age of majority was a mischaracterization of the law.

**3.** *See Whitener ex rel. Miller v. Dahl,* 625 N.W.2d 827, 832 (Minn.2001) (recognizing the significance of explicit language regarding the application of the minority tolling statute to a limitations period); *see also* Minn.Stat. § 645.26, subd. 1 (2000) (providing that if a general statutory provision appears in conflict with a special statutory provision, the two shall be construed, if possible, so that effect may be given to both).

year period of limitation provided in section 541.073 does not begin to run until a victim of sexual abuse reaches the age of majority. As noted above, the language of the statute does not support this conclusion, nor does our case law.

In *Blackowiak v. Kemp*, 546 N.W.2d 1, 3 (Minn.1996), we held that "as a matter of law one is 'injured' if one is sexually abused" and that an "objective, reasonable person standard" applies to determine when the complainant knew or should have known that he or she was sexually abused. We reiterated this holding in *W.J.L. v. Bugge*, 573 N.W.2d 677, 681 (Minn.1998), noting that because sexual abuse and personal injury "are intertwined, the victim is immediately put on notice of the causal connection between the abuse and injury" such that "the statute of limitations begins to run once a victim is abused" absent some disability "which would make a reasonable person incapable of recognizing or understanding that he or she had been sexually abused."[4]

No such disability is even claimed here. D.M.S. does not claim that he lacked competence or was under a disability due to his infancy or repressed memory; he merely asserts that under section 541.073 minor sexual abuse victims categorically have until age 25 to file a claim. In support of this argument he cites to our statement in *Bugge*, also cited by the majority, implying that a reasonable child is incapable of knowing that he or she has been sexually abused. But this statement was not in the context of the minority tolling statute because the joint application of the two statutes was not before the court; therefore, it is not controlling here.

The result of the interplay of sections 541.073 and 541.15, as the lower courts correctly concluded, is that a minor who has been sexually abused may bring his or her claim until age 19 (age 18 plus one year), or within six years of when the minor "knew or had reason to know that the injury was caused by the sexual abuse," whichever is later. D.M.S. turned 19 on September 10, 1998, and February 22, 1999 marked the expiration of six years from the date D.M.S. clearly demonstrated that he knew or should have known of the sexual abuse and injury—when he complained to his mother about Barber's abuse and was removed from the house. The filing of his claim on June 8, 1999 was therefore untimely and was properly dismissed on summary judgment.

RUSSELL, J. ANDERSON (dissenting).

I join in the dissent of Justice Stringer.

---

4. The majority states that, given our ruling in *Blackowiak* that "as a matter of law one is 'injured' if one is sexually abused," if the six-year delayed discovery period were deemed to commence to run before a child reaches 18 the statute would provide no additional time for children to commence an action. That may be true under some circumstances, but under no circumstances would a child have less than 6 years from the date of the injury—and that would seem to be all that the legislature intended.